## THOMAS WILLIS MYERS *v.* STATE OF MARYLAND

[No. 154, September Term, 1967.]

*Decided April 3, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Ralph C. Boyd* for appellant.

*Edward S. Digges, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Julian B. Stevens, Jr., State's Attorney for Anne Arundel County,* and *Ronald M. Naditch, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The appellant, Thomas W. Myers, was convicted on January 25, 1967 of first degree murder by the court sitting without a jury and sentenced to life imprisonment in the Maryland Penitentiary. He contends on this appeal that the trial court erred in admitting his oral confession in evidence since it was obtained in violation of the principles enunciated in *Miranda v. Arizona,* 384 U. S. 436.

The evidence adduced at the trial established that on April 23, 1966, the body of Agnes Greb was discovered in a wooded section of Anne Arundel County by two young boys. The victim's death was caused by wounds received from a .22 caliber shell. An investigation conducted by the Anne Arundel County Police revealed that appellant was with the deceased on the night of April 22 at the Halfway House. The investigation also revealed that the appellant owned a .22 caliber rifle and that laundry slips found near the victim's body belonged to him. As a result of this investigation, appellant became the prime suspect.

On May 10, 1966 at approximately 6:00 a.m., Detective Gilbert Majerowicz and Sergeant Jerome Bozek, dressed in civilian clothes and operating from their police car, undertook to locate the appellant. At 7:00 a.m. that morning they observed him walking on the street. The officers approached him and called out, "Myers, Police, we want to talk to you." The appellant hesitated briefly and then came over to the car and entered the back seat. Sergeant Bozek identified himself to the appellant as a police officer, displaying his badge. He then asked appellant if he had been to the Halfway House or White Gabels, two local taverns, to which he answered, "no." Asked if he were sure, the appellant replied, "oh, yeh." When further questioned as to whether he had ever given a woman a ride from the Halfway

House, the appellant replied, "no," but then added, "oh, you mean that woman I took to Annapolis?" The appellant further stated to the officers that he had taken a woman to Annapolis at her request and that from there he had gone to a Little Tavern shop. Throughout the period of this questioning, the police car was moving toward police headquarters. The appellant was physically shaking at this time, and Sergeant Bozek "decided to ask him a question for reaction." Accordingly, he inquired of the appellant, "Tom, why did you kill that woman?" to which he replied, "I, killed her, this won't get Nick in any trouble, will it?" (The "Nick" to whom appellant had reference was the owner of the Halfway House.) As they proceeded in the police car toward headquarters, appellant told the officers that the victim had attempted to blackmail him and that he had shot her several times with a rifle after which he hid her body and clothing.

The appellant was not informed by the officers prior to making his oral confession in the police car of his privilege against self-incrimination and right of counsel, as postulated by the *Miranda* decision. After he had orally related the details of the crime to the officers while in the moving police vehicle, the appellant took them to the scene of the crime, after which he was taken to police headquarters, where a written confession was taken from him.

At the trial the appellant's motion to suppress the written confession was granted. The court denied appellant's motion to suppress the oral confession, it being of the opinion that appellant was not under arrest, but only accosted, at the time he made his oral confession in the police car and that, consequently, the giving of *Miranda* warnings was not a prerequisite to the admission of the oral statement.

In *Miranda*, it was held at page 444 that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." [1] Since the State

---

**1.** A custodial interrogation cannot be initiated under *Miranda* until the accused is informed, in substance, that he has a right to

failed to demonstrate the use of any "procedural safeguards" prior to the obtaining of appellant's oral confession, the issue for determination is whether the statement was the product of "custodial interrogation" within the meaning of *Miranda*. "Custodial interrogation" was defined in *Miranda* as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." 384 U. S. at page 444.

We considered the reach of the term "custodial interrogation" in *Gaudio v. State,* 1 Md. App. 455, 468, and there noted that the evils with which the *Miranda* court was primarily concerned were: (1) the holding of a defendant incommunicado in an isolated setting; (2) sweeping him from familiar surroundings into police custody; (3) surrounding him with antagonistic forces; and (4) subjecting him to techniques of persuasion. In *People v. Hazel,* 60 Cal. Rptr. 437, the California District Court of Appeals expressed its view of when custody begins for purposes of applying *Miranda* principles, as follows: (pp. 440-441)

> "* * * [C]ustody occurs if a suspect is led to believe, as a reasonable person, that he is being deprived or restricted of his freedom of action or movement under pressures of official authority. * * * [T]he custody requirement of *Miranda* does not depend on the subjective intent of the law enforcement officer-interrogator but upon whether the suspect is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation. * * *"

This view of custodial interrogation was recently adopted by the Court of Appeals of New York in *People v. Rodney P.,*

---

remain silent, that anything he says can be used against him in court, that he has the right to consult with a lawyer and to have him present during interrogation, and that if he is indigent a lawyer will be appointed to represent him. Questioning may then proceed if the person to be interrogated understands the import of these procedural safeguards, and effectively waives them. See *Johnny Mack Brown v. State,* 3 Md. App. 313.

233 N. E. 2d 255, 286 N. Y. S. 2d 225, the court there noting that the purpose of the *Miranda* warnings "is to protect the individual's freedom of choice—to answer or not answer—in situations which are inherently coercive. * * *" 286 N. Y. S. 2d at page 231. The court there concluded: (p. 234)

> "* * * since, as a practical matter, a person's freedom is restrained or it is not, and he either feels free or does not, we believe that, in prefacing the word 'restraint' with the adjective 'significant', the Supreme Court intended that the warnings be given when the questioning takes place under circumstances which are likely to affect substantially the individual's 'will to resist and compel him to speak where he would not otherwise do so freely.' "

While *Miranda* safeguards may not be applicable to a confession gleaned from a suspect merely accosted by the police on a public street, *Morgan v. State,* 2 Md. App. 440, or a suspect questioned in his own home under a factual situation such as was present in *Duffy v. State,* 243 Md. 425, we hold—under the circumstances of this case—that the questioning of the appellant by the police officers in their police vehicle constituted a "custodial interrogation" within the ambit of the *Miranda* decision. As heretofore indicated, the appellant was the prime suspect in a murder case and the police had undertaken to find him. Once located, he was suddenly taken from the public street, and placed in a police car with two officers who interrogated him about the crime as the car moved toward police headquarters. That appellant was not free to leave the officers is wholly evident from the record, and we think "the atmosphere" thus created was such as carried "its own badge of intimidation." [2] See *Miranda* at page 457. We conclude that appellant's interrogation constituted "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way," squarely within *Miranda's* meaning, and consequently we hold that the lower court

---

2. See also *State v. Intogna,* 419 P. 2d 59 (Ariz.).

erred in admitting appellant's oral confession in evidence against him.

*Judgment reversed; case remanded for a new trial.*