469 A.2d 186

**COMMONWEALTH of Pennsylvania**

v.

**John EGAN, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 28, 1982.

Filed Nov. 18, 1983.

74

Warren R. Hamilton, Philadelphia, for appellant.

Gaele M. Barthold, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CERCONE, President Judge, and SPAETH, CAVANAUGH, WICKERSHAM, BROSKY, BECK and JOHNSON, JJ.

BROSKY, Judge:

This appeal is from judgment of sentence for robbery. Appellant argues that he should be allowed to withdraw his guilty plea for three reasons: First, because his counsel informed him that he would receive a lesser sentence than the one he ultimately received. Second, because he was in a "poor mental condition" at the time the plea was made. Third, because he was coerced into making his guilty plea through the court's refusal to grant a continuance to allow him to obtain new counsel. We find none of these arguments convincing and, accordingly, affirm.

### I.

Appellant stated in his *pro se* petition, and argues on appeal, that he should be permitted to withdraw his guilty plea because his counsel (Mr. Rubin) informed him that he would receive a two to ten year sentence, but in fact he received two consecutive three to ten year sentences. Mr. Rubin refuted this allegation in his sworn testimony at the March 13, 1980 hearing.

... I was instructed by Mr. Egan to ask the assistant district attorney assigned to the case—that would be you—if you would recommend a two to ten year sentence on a plea to all three bank robberies.

At that point I approached you and I questioned you concerning the instruction given to me by Mr. Egan. You at that point refused to make such a recommendation. I advised Mr. Egan of your refusal.

■■■ However, even if appellant's allegation was credited, it would avail him nothing. The statements of a defense counsel, without more, regarding the sentence that will be received establish no firm right. Nonconformity with such a statement could certainly result in the defendant's chagrin; but it does not create grounds for the withdrawal of a guilty plea.

The fact that in the finding of the Court as to the degree of defendant's guilt and the sentence imposed, the expectations or hopes of appellant and her counsel were not

realized is not the kind of "mistake of misapprehension" which in the interest of justice, justifies the withdrawal of a plea of guilty.

*Commonwealth v. Kirkland*, 413 Pa. 48 at 56, 195 A.2d 338 at 341-2 (1963). See also *Commonwealth v. Brown*, 242 Pa.Super. 240, 363 A.2d 1249 (1976); *Commonwealth v. Sanutti*, 454 Pa. 344, 312 A.2d 42 (1973).

## II.

Appellant also argues that he was in "poor mental health" at the time he entered his guilty pleas and that this justifies the withdrawal of those pleas. It is true that appellant was found to be incompetent at the time of his arrest and that this resulted in an 11-month delay in his being brought to trial. Also, there was testimony that he was incompetent at the second hearing on his petition to withdraw his plea on July 3, 1980. However, the psychologist limited his testimony to appellant's condition when examined several months after the entry of the plea. He specifically declined to venture any opinion on appellant's mental condition at the time of the entry of the guilty pleas. It is also the case that appellant's sentence included his initial placement at Philadelphia State Hospital.

None of this relates to appellant's mental condition at the pertinent time—when he entered his guilty pleas. Prior to that time, he was adjudicated competent. There are no other facts of record regarding appellant's mental condition at the relevant instant other than his statement that he was "under pressure."

Being "under pressure" at the time one enters a guilty plea cannot in and of itself establish the mental state of incompetency.[1] If this were the case, it would be impossible to ever have a valid guilty plea.

Our treatment of appellant's "poor mental condition" has been in terms of incompetency, even though it was

---

**1.** The pressure on appellant in terms of his alleged dissatisfaction with his counsel is treated *infra*.

presented by appellant in terms of his "poor mental condition" and not in terms of incompetency. This is because such incompetency is the only basis for invalidating the guilty plea on his mental state. Considering the requisite mental condition to support a finding of incompetency, this is eminently reasonable.

> *Definition of Incompetency.*—Whenever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues.

50 P.S. § 7402(a). See also *Commonwealth v. Harper,* 479 Pa. 42 at 45–6, 387 A.2d 824 at 826–7 (1978).

These are precisely the factors which would prohibit appellant from entering a valid guilty plea vis-a-vis his mental state. Thus, our focus must be on appellant's competency or incompetency.

■ One of the requirements for a finding of incompetency is the placement of the burden of proof. "The moving party shall have the burden of establishing incompetency to proceed by clear and convincing evidence." 50 P.S. § 7403(a). See also *Commonwealth v. Knight,* 276 Pa.Super. 348 at 354, 419 A.2d 492 at 495 (1980) (Spaeth, J.). "The decision as to a defendant's competency to stand trial rests within the discretion of the trial judge." *Id.,* 276 Pa.Superior Ct. at 359, 419 A.2d at 497. Since it is appellant who is arguing, in effect, his incompetency, it is he who has the burden of proof on this issue. Appellant has not met this burden of proof.

■ Absent *any* proof of his incompetency—much less a satisfaction of his burden of proof in this regard—we cannot invalidate appellant's guilty plea on the grounds of his incompetency.

### III.

Appellant's last argument is that he should have been allowed to withdraw his guilty plea because his request for a continuance to obtain new counsel was denied. He contends that this put him in the position of either proceeding to trial with counsel in which he did not have confidence or pleading guilty. This created, he says, a form of coercion which rendered his guilty plea involuntary.

As presented in the abstract, this argument is a convincing one. As applied to the facts of this case, it is unconvincing.

■ Notwithstanding the fact that an indigent defendant does not have a right to counsel of his choice, *Commonwealth v. Simpson*, 222 Pa.Super. 296, 294 A.2d 805 (1972), it is certainly conceivable that a defendant could be placed in a situation in which a lack of confidence in his court-appointed counsel could result in an unwillingness to go to trial. This could, in turn, result in the entry of an involuntary guilty plea. The questions before us are what the parameters are in which we will recognize that this has occurred and whether they are present here.

A recent United States Supreme Court decision, *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983), is most helpful in setting these boundaries. In the opinion of the Court, the Chief Justice wrote:

> The Court of Appeals' conclusion that the Sixth Amendment right to counsel "would be without substance if it did not include the right to a *meaningful attorney-client relationship*," [*Slappy v. Morris*] 649 F.2d [718] at 720 [ (9th Cir.1981) ] (emphasis added), is without basis in the law. No authority was cited for this novel ingredient of the Sixth Amendment guarantee of counsel, and of course none could be. No court could possibly guarantee that a defendant will develop the kind of rapport with his attorney—privately retained or provided by the public—that the Court of Appeals thought part of the Sixth Amendment guarantee of counsel. Accordingly, we reject the

claim that the Sixth Amendment guarantees a "meaningful relationship" between an accused and his counsel. *Morris v. Slappy,* supra, 461 U.S. at ___, 103 S.Ct. at 1617.

■ The lesson to be gained from this holding is simple. Appellant's mere dissatisfaction with counsel does not work a violation of his Sixth Amendment right to counsel. Without more, such dissatisfaction could not create a situation which we would recognize as coercing a guilty plea.

■ This is in accord with the law regarding continuances. The decision whether to grant a continuance is within the discretion of the court below. *Commonwealth v. Kittrell,* 285 Pa.Super. 464, 427 A.2d 1380 (1981). An appellate court cannot disturb a continuance decision absent an abuse of that discretion. The United States Supreme Court also addressed this area in *Morris.*

> Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel. *Ungar v. Sarafite,* 376 U.S. 575, 589 [84 S.Ct. 841, 849, 11 L.Ed.2d 921] (1964).

*Morris,* supra, 461 U.S. at ___, 103 S.Ct. at 1616.

Only if there was a "justifiable request for delay," which was not granted, could appellant's right to counsel have been violated and the guilty plea have been coerced.

What would make such a request justifiable? All such requests cannot be *per se* justifiable. That would enable a criminal defendant to indefinitely delay his going to trial. He would simply have to announce to the court at every trial date that he was dissatisfied with his counsel and wanted a continuance to obtain new counsel. Nor, as noted above, can all such requests be considered *per se* unjustifia-

ble. A standard is necessary to separate the justifiable from the unjustifiable request for a continuance due to dissatisfaction with counsel.

In determining the applicable standard, we have looked to the test applied in a similar context: whether a confession can be suppressed because it was given in a custodial interrogation setting without constitutional safeguards, rooted in voluntariness, having been met. The situation before us has many parallel features: whether a guilty plea can be withdrawn because it was given in a situation without constitutional safeguards, rooted in voluntariness, having been met.

The standard to be applied to the former situation in this Commonwealth was announced in *Commonwealth v. Marabel*, 445 Pa. 435, 283 A.2d 285 (1971) (Eagen, J.).

It is our view that the proper test was applied in *Myers v. State*, 3 Md.App. 534, 240 A.2d 288 (1968), wherein the court stated:

> * * * [C]ustody occurs if a suspect is led to believe, as a reasonable person, that he is being deprived or restricted of his freedom of action or movement under pressures of official authority. * * * whether the suspect is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action of movement is restricted by such interrogation." Id. at 537, 240 A.2d at 290.

The above test has the element of objectiveness since we look at what the suspect could believe as a reasonable man, and by focusing on the suspect, compliance with the thrust of the *Miranda* decision is achieved.

*Commonwealth v. Marabel*, supra, 445 Pa. at 441–42, 283 A.2d at 288.

The rationale supporting this standard applies to the legal issue before us.

11. Professor Kamisar has recently characterized the "reasonable belief" standard as the "best approach." See Remarks of Professor Kamisar at the First Annual Su-

preme Court Review and Constitutional Law Symposium reprinted in The Supreme Court 1978–79 Ch. 12 p. 184 (1979).

> "This approach seems most consistent with *Miranda* and it avoids reliance on self-serving statements either by the police or by the suspect himself. This approach also avoids the need to determine the police interrogator's state of mind and frees the police officers from the responsibility for the idiosyncrasies of various suspects."

*Commonwealth v. Meyer*, 488 Pa. 297 at 307 n. 11, 412 A.2d 517 at 522 n. 11 (1980).

█ The standard announced in *Marabel* is transferable to the situation before us: whether a guilty plea can be withdrawn on the grounds that the guilty plea was coerced through the denial of a continuance, forcing appellant to plead guilty rather than go to trial with counsel in whom he had no confidence.

█ We hold that this standard is that the criminal defendant must have a reasonable belief that his counsel will not adequately represent him. At the risk of explaining the obvious, we note that this requirement consists of two parts. First, that the criminal defendant must actually have such a belief. Second, that this belief is reasonable. The facts of this case satisfy neither element.

There is room for considerable doubt that appellant was actually dissatisfied with his counsel at the time of entering his guilty plea. Three events lead to this conclusion. Prior to his arrival in court, appellant had indicated his intention to plead guilty. While in court, he announced that he had changed his mind and had decided to go to trial. Then, a few hours later, he again changed his mind and requested a continuance to obtain new counsel. When this request was denied he entered the guilty pleas in question. We do not find it credible that appellant was dissatisfied with counsel on the day in question when he wanted, that very day, to go to trial with him as his counsel.

Second, in his *pro se* petition requesting permission to withdraw his guilty plea, appellant made no mention of his dissatisfaction with counsel or the effect that had on his pleading guilty.

Third, at sentencing appellant stated on the record that he had made a mistake in obtaining new, post-plea counsel and asked the Court to arrange for Mr. Rubin to represent him in this appeal.[2]

After the entry of the plea, a court-appointed psychologist characterized appellant as a "manipulative" person. The events described above support that description and do not lend credibility to appellant's alleged dissatisfaction with counsel.

 The facts of this case also lead to the conclusion that any such belief, even if actually held, would have been unreasonable. There is no evidence on the record that counsel was not able to adequately represent appellant.

The basis for appellant's alleged dissatisfaction with counsel was that he had visited appellant in prison only once in the preceding year. Once again, the opinion in *Morris* is on point.

Not every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel. See *Chambers v. Maroney*, 399 U.S. 42, 53–54 [90 S.Ct. 1975, 1982–83, 26 L.Ed.2d 419 (1970)]

*Id.*[3]

This case is not governed by other similar, but distinguishable, cases. *Commonwealth v. Tyler*, 468 Pa. 193, 360 A.2d 617 (1976), held that "irreconcilable differences" between counsel and a criminal defendant would justify a

---

**2.** Considering the issue before us here, it is just as well that this request was not granted.

**3.** This Court noted recently that the right of a defendant to have the assistance of counsel of his own choice is not absolute. *Commonwealth v. Boettcher*, 313 Pa.Super. 194 at 202, 459 A.2d 806 at 809 (1983).

continuance. No such "irreconcilable differences" have been alleged here. Nor does *Commonwealth v. Ross,* 465 Pa. 421, 350 A.2d 836 (1976), apply. *Ross* held that it was an abuse of discretion to not grant a continuance where counsel had inadequate time to prepare. Again, there is no indication of record that this was the situation here. *Commonwealth v. Atkins,* 233 Pa.Super. 202, 336 A.2d 368 (1975), presents yet another distinguishable set of facts. There, error was found in forcing appellant to go to trial with counsel's associate. Mr. Rubin, to the contrary, was appointed as appellant's counsel after appellant had requested, through Mr. Rubin, that he be appointed.

We conclude that there was no justifiable reason for the court to have granted appellant's request for a continuance due to his alleged dissatisfaction with counsel. It is doubtful that appellant was dissatisfied and, even if he was, such dissatisfaction would have been unreasonable. Since the court did not err in refusing to grant the continuance, it would be inconsistent to hold that an invalid guilty plea resulted from the denial of the continuance request.

Prior to sentencing, petitions to withdraw guilty pleas "are to be liberally allowed for any 'fair and just reason' unless the prosecution has suffered substantial prejudice." *Commonwealth v. Hayes,* 462 Pa. 291 at 300, 341 A.2d 85 at 90 (1975). This standard does not result in the automatic granting of such petitions. *Commonwealth v. Dorian,* 314 Pa.Super. 244, 460 A.2d 1121 (1983). Following our analysis above, we find that a "fair and just reason" was presented—but in an unconvincing manner, considering the particular facts of this case.

Thus, none of the three arguments appellant advances in support of the reversal of the denial of the petition to withdraw his guilty plea are persuasive. Judgment of sentence is, accordingly, affirmed.

CAVANAUGH, J., concurs in the result.

SPAETH, J., files a dissenting opinion.

JOHNSON, J., files a dissenting statement.

SPAETH, Judge, dissenting:

I believe that appellant's petition to withdraw his guilty plea should have been granted because the plea was not voluntarily entered. I should therefore reverse.

The majority says that "[a]s presented in the abstract, [appellant's] argument is a convincing one [but that] [a]s applied to the facts of this case, it is unconvincing." Maj. op. 189. Let us see, therefore, what the facts are.

On January 24, 1980, appellant pleaded guilty to three robberies. On March 13, the trial court denied appellant's *pro se* petition to withdraw the guilty plea, and on May 22, imposed consecutive sentences of three to ten years imprisonment for each of the robberies. On June 3, appellant filed a counseled petition to withdraw the guilty plea; counsel was not the same as counsel who had appeared when appellant entered the plea. On July 3, the trial court denied the petition.

At the beginning of the January 24 proceeding, the trial court began a jury trial waiver colloquy with appellant. Moments later, the following exchange took place between the court, Mr. Rubin, who was appellant's court-appointed counsel, and appellant:

"THE COURT: Mr. Rubin has consulted with you in reference to this waiver of a right to a trial by jury; is that correct?

You have talked about it?

MR. RUBIN: Yes, Your Honor, I have talked to the defendant about that on several occasions. He has indicated to me on most of the occasions that he would waive a jury trial.

I would like to bring to the Court's attention and for the record, that when Mr. Egan came into court this morning and I attempted to discuss that same issue with him this morning, he indicated to me that he would not discuss

anything with me, he wanted another attorney and he wanted me discharged as his lawyer. I am court appointed, sir.

THE COURT: Is that true, Mr. Egan?

THE DEFENDANT: Yes.

THE COURT: Why do you want to do that? Mr. Rubin is a good lawyer.

THE DEFENDANT: I am not satisfied, sir.

THE COURT: Why aren't you satisfied?

THE DEFENDANT: He only came to see me once in a year. He had himself appointed on the case. He came to me, I didn't approach him.

I called him from Holmesburg and he told me he is too busy. He doesn't have an interest in the case. I would feel better with a lawyer I don't know. I thought I knew this guy.

THE COURT: Before I came out here, Mr. Rubin did talk to the district attorney and I in the back room. I know he has a very extensive file. I know he has a complete understanding of the case. He knows a great deal about you and the witnesses and everything and he can anticipate everything that will come up in the trial. I know he is prepared. He is a good lawyer. At this juncture we could not very well substitute another lawyer for you.

THE DEFENDANT: You don't have to substitute. I will make some kind of arrangements to get somebody else. I don't want him. I don't have any confidence in him.

THE COURT: You have to do that immediately.

THE DEFENDANT: I will do something.

THE COURT: What will you do?

THE DEFENDANT: I don't know. I was thinking of writing Daniel Preminger.

THE COURT: He won't represent you unless you have a lot of money.

THE DEFENDANT: I don't know. Maybe I can work something out. If not, I will have to take a PD. I don't want this guy, I really don't want him.

If I am going to go to jail, I want it to be with somebody I know.

THE COURT: He has been in this case from the very beginning, hasn't he?

THE DEFENDANT: And it was a mistake from the beginning. It was my mistake. I am going to state right now that I don't want him.

THE COURT: I can't remove him right now.

THE DEFENDANT: Well, I don't want to go to trial with him. I will put it in the record.

THE COURT: All right, it is in the record. He will remain here and he will be your attorney. You don't have the right to choose your attorney, that is what I am trying to tell you.

THE DEFENDANT: I don't have a right to hire my attorney?

THE COURT: If you pay for him, yes. But your attorney is court appointed you don't have the right to pick and choose. An attorney has been provided to you.

THE DEFENDANT: I didn't pick this guy. He came to me. I don't think he has any right to do that. He solicited it.

THE COURT: He was court appointed.

THE DEFENDANT: No. He came to me at City Hall and he said, "Do you want me to have myself appointed?" And he did that. I had him in the past.

THE COURT: We won't continue this.

MR. RUBIN: May I make a statement? Based upon what Mr. Egan has said and my experiences with him in the last year, I would move at this point to be permitted to withdraw from the case as well, under the circumstances.

THE COURT: I won't let you withdraw Mr. Rubin.

MR. RUBIN: Yes, sir.

THE COURT: Mr. Rubin, have you explained to your client all the consequences of a decision to waive a jury trial?

MR. RUBIN: Yes, sir; on numerous occasions.

THE COURT: And he understands it?

THE DEFENDANT: Your Honor, I want a jury trial.

THE COURT: You want a jury trial?

THE DEFENDANT: Yes, sir.

THE COURT: Very well, you will get a jury trial. Let us recess and call for the jury.

THE DEFENDANT: Your Honor, I want to subpoena a lot of people to this trial. And I want him to do it.

THE COURT: Very well. We will get the witnesses. Sure, we will help you.

THE CRIER: This court will stand in recess to the call of the crier.

(Recess held.)

(Whereupon, a jury panel was brought to the courtroom, duly sworn and voir dire of the jury panel commenced.)

(Luncheon recess.)

(During the afternoon session, voir dire of the jury panel continued. The following occurred during the afternoon session, in the courtroom and out of the presence of the jury panel:)

THE COURT: Are we going to do that, gentlemen, take a plea?

MR. RUBIN: Your Honor, could we approach the bench one more time?

THE COURT: Sure. Mr. Egan, would you come up, please. Swear him in, please.

THE CRIER: He was sworn in this morning, Your Honor.

THE COURT: He was sworn?

THE CRIER: Yes.

THE COURT: Mr. Egan, it has been indicated to this Court that you wish to enter pleas of guilty only to the robbery charges, and I think there are three of them; is that correct?

MR. CARPENTER: Three Bills, yes, three robberies.

\* \* \* \* \* \*

THE COURT: Are you now suffering from any physical, mental or emotional problem which might affect your understanding of everything that is said here today?

THE DEFENDANT: I feel like I am under a lot of pressure.

THE COURT: But do you understand everything?

THE DEFENDANT: Yeah.

THE COURT: I can understand the pressure you are under. Are you satisfied with the representation so far?

THE DEFENDANT: Yes, sir."

N.T. 1/24/80, 4–13.

Following this exchange, the trial court entered into a colloquy with appellant, advising appellant of his right to a trial before a judge and jury or before a judge alone. At the end of the colloquy, appellant entered his plea. Appellant does not claim that the colloquy was incomplete.

On these facts, the majority holds that to be permitted to withdraw a guilty plea entered after a request for a continuance to obtain new counsel has been denied, the "defendant must have [had] a reasonable belief that his counsel [would] not adequately represent him." Maj. op. at 81. It then goes on to find "considerable doubt that appellant was actually dissatisfied with his counsel." *Id.* at 81.

Initially, I acknowledge my difficulty in understanding the basis of the majority's new test. Whether one is in "custody" under *Commonwealth v. Marabel*, 445 Pa. 435, 283 A.2d 285 (1971), is determined by an objective test: What would a reasonable person in the defendant's position at the time of interrogation believe? Contrary to the major-

ity, there is *no* requirement of showing "that the criminal defendant must *actually* have [had] such a belief." Maj. op. at 81 (emphasis added). The majority's deduction of a subjective standard, maj. op. at 80–83, from an objective one is, I submit, a *non sequitur* and is unsupported by the majority's own citations. However, any extended comment on the majority's test seems unnecessary. For settled precedent provides the basis for deciding this appeal, and I can only suppose the majority has fashioned its new test because it is dissatisfied with the result to which application of this precedent leads.

To support its conclusion that appellant did not actually believe that his counsel would not adequately represent him, the majority relies on "[t]hree events." Maj. op. at 81. It notes that appellant did not cite his dissatisfaction with counsel in his *pro se* petition to withdraw his guilty plea;[1] that at sentencing he indicated dissatisfaction with his post-guilty plea counsel and requested that Mr. Rubin represent him on appeal; and that appellant's actions on the day he pleaded guilty do not show that he was dissatisfied with counsel.[2]

The first two events occurred after appellant's plea of guilty. They are therefore of little, if any, help in deciding, either whether the trial court should have granted appellant a continuance so that appellant might obtain new counsel, or whether appellant's guilty plea was voluntary. Thus, the United States Supreme Court has said:

> There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present

---

1. I find no such petition in the record. It is true, however, that at the pre-sentencing hearing on appellant's petition to withdraw his guilty plea appellant did not testify that he had been dissatisfied with counsel. *See* N.T. 2/20/80; 3/13/80.

2. In addition to the matters cited by the majority, it may be noted that at the hearing on his petition to withdraw his guilty plea, appellant stated that the "main reason" he entered it was his impression that his counsel had obtained an agreement from the judge that appellant would be sentenced to no more than two to ten years in prison. N.T. 3/13/80 12–13. *But see id.* at 75.

in every case, *particularly in the reasons presented to the trial judge at the time the request is denied.*
*Ungar v. Sarafite,* 376 U.S. 575, 589–90 [84 S.Ct. 841, 850, 11 L.Ed.2d 921 (1964)] (citations omitted) (emphasis added).

*See also Commonwealth v. Kittrell,* 285 Pa.Super. 464, 427 A.2d 1380 (1981). Since the trial court could not have based its denial of appellant's request for a continuance on events that occurred after its order, we should not consider such events in reviewing its order.

With regard to appellant's actions on the day he pleaded guilty, three comments seem required.

First, the record does not support the majority's description of appellant's actions. At least, I find nothing in the record to support the majority's statement that "[p]rior to his arrival in court, appellant had indicated his intention to plead guilty." Maj. op. at 81. When the proceeding began, appellant participated in a jury-trial waiver colloquy, which ended only when his counsel advised the court that appellant desired a new attorney.

Second, the majority states that given appellant's actions on the day he pleaded guilty, "[w]e do not find it credible that appellant was dissatisfied with counsel...." Maj. op. at 81. I should have supposed that a finding of credibility was for the trial court, to be made after a hearing on the issue of what appellant did or did not think. There has been no such hearing or finding in this case.

Finally, and in any event, appellant's actions must be examined in the context in which they occurred. I have quoted the relevant portion of the record in its entirety, above, and in what follows I shall refer only to the salient features.

Immediately upon appearing before the trial court, appellant made it plain that he did not wish to proceed because he had lost confidence in Mr. Rubin and needed time to get new counsel. He explained that Mr. Rubin had sought him, asking appellant whether he wanted Mr. Rubin to have

himself appointed by the court to represent him, but that then, after being appointed, Mr. Rubin had said he was too busy to come to the prison, and had seen him only once in a year.

While neither agreeing nor disagreeing with this account, Mr. Rubin confirmed appellant's dissatisfaction, informing the court that appellant "would not discuss anything with me." N.T. 4–5. The court's reaction to Mr. Rubin's statement was to try to persuade appellant to continue with Mr. Rubin as his counsel. Thus the court told appellant, "I know he [Mr. Rubin] has a complete understanding of the case .... I know he is prepared. He is a good lawyer. At this juncture we could not very well substitute another lawyer for you." N.T. 6. When appellant replied, "You don't have to substitute. I will make some kind of arrangements to get somebody else," the court said, "You have to do that immediately." N.T. 6.

There ensued a sort of tug-of-war between the court and appellant. When appellant said, "I was thinking of writing Daniel Preminger," the court replied, "He won't represent you unless you have a lot of money." N.T. 7. When appellant said that if necessary, he would "Take a PD [Public Defender]," but that in any event, he didn't want to be represented by Mr. Rubin, the court replied, "I can't remove him right now." *Id.* When appellant said, "Well, I don't want to go to trial with him," the court said, "You don't have the right to choose your attorney ...." N.T. 7–8. When appellant said, "I don't have the right to hire my attorney?", the court said, "If you pay for him, yes. But your attorney is court appointed. You don't have the right to pick and choose. An attorney has been provided for you." N.T. 8. When appellant protested that he had not picked Mr. Rubin, the court said, "We won't continue this," and followed this statement by refusing Mr. Rubin's request that he be permitted to withdraw. N.T. 9.

Appellant then announced that he wanted a jury trial. A panel was summoned, and voir dire commenced. During voir dire Mr. Rubin informed the court that appellant

wished to plead guilty, and the guilty plea colloquy then commenced. N.T. 9–12.

I think it clear from this record that the trial court should not have compelled appellant to proceed with Mr. Rubin as his counsel, first to trial and then to the guilty plea proceeding. Instead, the court should have granted appellant's request for a continuance to enable him to try to obtain either private counsel, or, failing that, the Public Defender.

Although whether to grant a continuance for the defendant to obtain new counsel is within the discretion of the trial court, *Commonwealth v. Kittrell*, 285 Pa.Super. 464, 427 A.2d 1380 (1981), in exercising its discretion the court must apply a balancing test. *Id; Commonwealth v. Andrews*, 282 Pa.Super. 115, 422 A.2d 855 (1980); *Commonwealth v. Atkins*, 233 Pa.Super. 202, 336 A.2d 368 (1975); *Commonwealth v. Simpson*, 222 Pa.Super. 296, 294 A.2d 805 (1972). On one side of the balance is the accused's right to counsel of his choice. On the other side is the fact that the accused's right to counsel is not unqualified. He may not, by demanding particular counsel, unreasonably impede the efficient administration of justice. *Commonwealth v. Simpson, supra.*

In *Commonwealth v. Nicolella*, 307 Pa.Super. 96, 452 A.2d 1055 (1982), this court held that the trial court had abused its discretion in failing to grant appellant's request for a continuance to obtain new counsel. In *Nicolella*, the defendant had requested the continuance because his attorney had previously represented a co-defendant and the co-defendant was the principal witness against him. We noted that the Commonwealth had not argued that it would have been prejudiced by granting the continuance, nor was it claimed that witnesses would become unavailable, or evidence lost if the continuance were granted. We further noted that the defendant had made no previous requests for new counsel, and that defendant's counsel admitted that he did not have his client's confidence.

The circumstances here are at least as compelling as in *Commonwealth v. Nicolella, supra.* Application of the

balancing test reveals that appellant should have been granted a continuance to obtain other counsel, for the balance comes down almost entirely on appellant's side. Appellant has a "constitutional right to choose at his own cost and expense any lawyer he may desire," *Commonwealth v. Kittrell, supra,* 285 Pa.Super. at 467, 427 A.2d at 1381; it was appellant's first request for new counsel; and no evidence suggests that appellant's request was an attempt to impede the administration of justice. At no point did the Commonwealth object to appellant's request for a continuance, or indicate that a continuance would result in any inconvenience to it or its witnesses. Whether justified or not, appellant's dissatisfaction with Mr. Rubin was evidently sincere—and Mr. Rubin did not question its sincerity; indeed, he requested permission to withdraw as appellant's counsel. Nor did appellant insist upon any particular person to represent him, saying that if necessary, he would accept the Public Defender. To be sure, granting a continuance would have resulted in some delay. But the trial court could have readily specified that the continuance would be for only a brief period.

In *Commonwealth v. Tyler,* 468 Pa. 193, 360 A.2d 617 (1976), the Supreme Court held that it was reversible error for the trial court to refuse to grant the defendant's request for a continuance for appointment of new counsel after the defendant had stated in open court, and defense counsel had agreed, that they had "irreconcilable differences." The Supreme Court said that by refusing to grant a continuance, and compelling the defendant to proceed to trial *pro se,* the trial court had presented the defendant with a "Hobson's choice"—he was forced "to either accept court appointed counsel with whom an irreconcilable difference as to the manner in which the trial should be conducted had arisen, a difference which was corroborated by counsel, or to represent himself." *Id.,* 468 Pa. at 199, 360 A.2d at 620. *See also Commonwealth v. Ross,* 465 Pa. 421, 350 A.2d 836 (1976) (abuse of discretion to refuse continuance where defendant was forced to trial with defense counsel who had

inadequate time to prepare); *Commonwealth v. Atkins,
supra* (abuse of discretion to refuse continuance where
defendant mistakenly believed chosen counsel would repre-
sent her at trial but was forced to trial with chosen coun-
sel's associate).

Here, by refusing to grant appellant's request for a
continuance, the trial court confronted appellant with the
necessity of choosing among three possible courses of ac-
tion: 1) he could proceed to trial and represent himself; 2)
he could proceed to trial, represented by counsel whom he
did not want and who did not want him; or 3) he could plead
guilty. In the event, appellant first tried going to trial—the
record does not disclose to what extent Mr. Rubin repre-
sented him—and then, giving up on that, decided to plead
guilty. In these circumstances appellant's decision to plead
guilty cannot fairly be regarded as having been any more
voluntary than was the defendant's decision to proceed *pro
se* in *Commonwealth v. Tyler, supra. See also Common-
wealth v. Tabb,* 477 Pa. 115, 383 A.2d 849 (1978) (guilty plea
not voluntary or knowing where trial court did not explain
charges in understandable fashion); *Commonwealth v.
Ward,* 483 Pa. 53, 394 A.2d 535 (1978) (guilty plea not
voluntary or knowing where trial court did not explain
requirement of unanimous jury).

Indeed, this case is a stronger case than *Tyler.* For if it
is a denial of due process to compel a defendant to go to
trial represented by counsel with whom the defendant has
irreconcilable differences, *a fortiori* it is a denial of due
process to compel a defendant to enter a guilty plea repre-
sented by such counsel. As the United States Supreme
Court has explained:

> Central to the plea and the foundation for entering judg-
> ment against the defendant is the defendant's admission
> in open court that he committed the acts charged in the
> indictment. He thus stands as a witness against himself
> and is shielded by the Fifth Amendment from being
> compelled to do so—hence the minimum requirement that
> his plea be the voluntary expression of his own choice.

But the plea is more than an admission of past conduct; it is the defendant's consent that judgment of conviction may be entered without a trial—a waiver of his right to trial before a jury or a judge.

*Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468–69, 25 L.Ed.2d 747 (1970).

*See also Commonwealth v. Ammon,* 275 Pa.Super. 324, 331 n. 4, 418 A.2d 744, 747 n. 4 (1980) ("guilty plea involves the surrender of a panoply of constitutional rights"); *Commonwealth v. Landi,* 280 Pa.Super. 134, 141, 421 A.2d 442, 445 (1980) (guilty plea is waiver of "a number of significant constitutional rights").

I have not overlooked the Commonwealth's argument that when a defendant seeks to withdraw his plea after sentence is imposed, manifest injustice must appear. *Commonwealth v. Starr,* 450 Pa. 485, 301 A.2d 592 (1973); *Commonwealth v. Mitchell,* 262 Pa.Super. 268, 396 A.2d 748 (1978). Here, however, not only did appellant attempt to withdraw his plea before sentence, by proceeding *pro se,* but manifest injustice does appear. As I have tried to show, on balance virtually every consideration dictated granting appellant a brief continuance so that he could obtain new counsel, who could advise him whether he should make so extensive a waiver of his constitutional rights as a guilty plea represents.

The judgments of sentence should be reversed and the case remanded with instructions to permit appellant to withdraw his guilty plea.

JOHNSON, Judge, dissenting:

I respectfully dissent on the basis of my opinion in *Commonwealth v. Wolfe,* 301 Pa.Super. 187, 447 A.2d 305 (1982). The trial court failed to balance appellant's request for new counsel, and the related request for a continuance against society's interest in the prompt and efficient administration of justice. I believe the failure to balance the competing interests is an abuse of discretion in itself. Therefore, I see no need to address the substantive merits

of the request for a continuance nor appellant's motivation in seeking new counsel. I would reverse the order of the trial court and allow appellant to withdraw his plea.