489 A.2d 813

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Gerald L. CAPPELLI, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 16, 1984.

Filed March 1, 1985.

10

12

Robert F. Pappano, Chester, for appellant.

Helen Kane, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before SPAETH, President Judge, and CAVANAUGH, WIEAND, McEWEN, CIRILLO, DEL SOLE, JOHNSON, POPOVICH and CERCONE, JJ.*

CAVANAUGH, Judge:

Appellant, Gerald L. Cappelli, seeks to set aside his judgment of sentence on the grounds that (1) the trial court erred in refusing his motion to reconsider sentence and withdraw his guilty plea without a hearing; (2) he was denied effective assistance of counsel; (3) the lower court erred in not assigning sufficient and adequate reasons for the sentence imposed; and, (4) the sentence imposed was manifestly excessive. We find no merit to any of these contentions and, therefore, affirm.

We may consider the first and second claims together since they are related. It is claimed that the court erred in failing to provide a hearing upon his post-sentence petition to withdraw his guilty plea. Conjunctively, it is claimed that trial counsel (different from present appellate counsel) was ineffective in that he "had indicated, prior to the entry of the guilty plea" that appellant would receive a sentence which was considerably less than the sentence actually received. Appellate counsel asserts that if there had been a hearing on the motion to withdraw the guilty plea this point would have been established.

We first observe that the challenge to the guilty plea was made after sentencing and that, therefore, the standard for determination of the right to withdraw is a showing of manifest injustice. *Commonwealth v. Starr*, 450 Pa. 485, 301 A.2d 592 (1973); *Commonwealth v. Woods*, 452 Pa. 546, 307 A.2d 880 (1973); *Commonwealth v. Ammon*, 275 Pa.Super. 324, 418 A.2d 744 (1980). *See also ABA Project on Minimum Standards for Criminal Justice, Standards*

---

* Cercone, J. did not participate in the consideration or decision of this case.

*Relating to Pleas of Guilty* § 2.1 (Approved Draft 1968). We next look to appellant's motion to withdraw the guilty plea, which in this case was joined with a motion to appoint counsel and a motion to reconsider sentence. The reason given for withdrawal of the plea is that appellant "was mis-led by Counsel as to what the severity of the sentence would be" and that "in light of his age, intelligence, and standing he believes that the Guilty Plea was not knowingly and intelligently entered...." The trial court refused to grant a hearing upon appellants motions but did appoint new counsel to represent appellant on appeal. Under these circumstances, did the court err in not providing appellant with a hearing on his petition to withdraw his guilty plea? We think not. On October 8, 1981, Cappelli entered his guilty plea after an extensive colloquy.[1] The guilty plea was a negotiated one which was memorialized in a detailed agreement which had been signed by appellant, his attorney and the district attorney. The agreement was placed in the record and there were painstaking efforts to assure that Cappelli understood the nature of the plea agreement.

At the outset, the court and the district attorney established the background giving rise to the plea:

MR. WIEDEMER: [Assistant District Attorney]

Good morning, Your Honor. May it please the Court, inviting the Court's attention to Commonwealth versus Gerald Cappelli, 3325 of '81 and 3516 of '81. Let the record reflect the defendant is in court represented by Randolph Von Till, Esquire. Your Honor, this is a negotiated plea. There is a detailed agreement or plea agreement in this matter. I ask leave to hand up the original copy of this agreement signed by the Commonwealth's attorney, the defendant, and Mr. Von Till.

. . . .

THE COURT: I think that you'll have to express the agreement on the record as far as handing it up, so I can be sure he understands what's going on, et cetera.

---

1. The notes of testimony of the guilty plea proceedings cover fifty-seven pages.

14

Jerry, how old are you?

THE DEFENDANT: Twenty.

THE COURT: And Mr. Von Till is your lawyer?

THE DEFENDANT: Yes.

. . . .

THE COURT: Now, have you been having meetings and conferences with Mr. Von Till?

THE DEFENDANT: Yes.

THE COURT: And are you satisfied that he understands the facts of all of the cases against you?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied that he's represented you to the best of his ability and for your best interests?

THE DEFENDANT: Yes.

THE COURT: Do you have any complaints or criticisms about his representations of you?

THE DEFENDANT: No.

THE COURT: Are you satisfied with his representation of you?

THE DEFENDANT: Yes.

THE COURT: All right.

. . . .

MR. WIEDEMER: Very well. May I go forward, Your Honor?

THE COURT: Yes.

MR. WIEDEMER: And now this first day of October, 1981, I, Gerald Cappelli, enter into the following agreement with the Commonwealth of Pennsylvania represented by A. Roy DeCaro, Deputy District Attorney and Kirk V. Wiedemer, Assistant District Attorney. I am entering this agreement with the advise [sic] and assistance of Counsel. My Counsel is Randolph Von Till, Esquire. I have reviewed this agreement with my Counsel and have discussed all of its terms with him. All the terms and conditions of this agreement have been explained to me

and I fully understand them. I am entering into this agreement of my own free will. I am entering into this agreement voluntarily. I have not been forced or coerced to enter into this agreement. I am entering into this agreement because I am guilty of the crimes to which I will hereafter agree to plead guilty and because I believe that entering into this agreement is in my best interest.

Thereafter, the multiple charges to which Cappelli was pleading guilty were described and the agreement was further read into the record:

I, Gerald Cappelli, am agreeing to plead guilty to all of the offenses listed above because I am guilty of all and each of them.

I, Gerald Cappelli, agree to fully cooperate with the Commonwealth of Pennsylvania in the prosecution of any and all of the following persons: Richard Yacoubian, Tyrone Fox, Paul Cummings.

Thereafter, appellant's specific obligations under the agreement were stated, and we quote, in part:

I, Gerald Cappelli, understand that in exchange for the above and foregoing, the Commonwealth of Pennsylvania, by Messrs. DeCaro and Wiedemer agree to make the following recommendations:

1. At time of my sentencing, the Commonwealth will recommend that the sentences on the crimes to which I am entering pleas of guilty as stated above will all be concurrent to and with one another.

2. That my minimum term of incarceration will not exceed ten years and that my maximum term of incarceration will not exceed twenty years.

3. That the actual terms of my sentence will be up to the sentencing Judge, in the Judge's discretion, not to exceed the terms set forth immediately above. I understand that this means that I could go to jail for a minimum of ten years to a maximum of twenty years or for any period of time less than those periods.

. . . .

I, Gerald Cappelli, understand that if I violate any of the terms of this agreement that the agreement becomes null and void and that the Commonwealth will not be bound by its terms, and that should I violate the agreement after I tender my guilty pleas and after they are accepted by the Court of Common Pleas of Delaware County and the Commonwealth of Pennsylvania will be free to make whatever sentencing recommendations it deems appropriate up to and including maximum consecutive jail terms for all of the crimes to which I am pleading guilty and for which I can be sentenced.

I have read and reviewed this agreement with my Counsel. I fully understand all of its terms. I am entering into this agreement fully and voluntarily, not having been pressured, coerced, or otherwise forced to do so.

By signing this agreement, I intend to be bound by its terms.

The original copy that I've handed up to the Court contains the signature of Mr. Cappelli, Mr. Von Till, Mr. DeCaro and myself, Your Honor.

At this point, the court took up further inquiry of appellant:

THE COURT: Jerry, Mr. Wiedemer is going to read me the facts which give rise to and support each one of the crimes to which you're pleading guilty. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I want you to listen closely and I'm sure Mr. Von Till will be listening with you. If there's any change, you simply interrupt as Mr. Von Till has up to this point to bring to the attention of the Court any change. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you do not have to plead guilty to anything?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you don't have to enter into any agreement? Do you understand that?
THE DEFENDANT: Yes.
THE COURT: Do you understand that if you wanted jury trials or non-jury trials on every one of the charges against you, we would give you such a trial and as a matter of fact, we have fixed trial dates as you've probably been aware beginning October 19th. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: And do you understand that no matter what Mr. Von Till tells you, if you weren't guilty and you didn't want to plead guilty because you weren't guilty, or if you didn't want to plead guilty for any other reasons, we would have a trial. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: Has anybody forced you or threatened you in any way in order for you to plead guilty?
THE DEFENDANT: No.
THE COURT: Now, this is a written agreement which indicates that you have previous to today read it and Mr. Wiedemer has today put it on the record. Do you understand that agreement?
THE DEFENDANT: Yes.
THE COURT: Is there anything about the agreement you don't understand?
THE DEFENDANT: No.

Following an exhaustive colloquy as to the specific charges to which appellant was pleading guilty, he was further asked:

MR. VON TILL: Now, do you understand that the guilty plea will appear on your record as a conviction?
THE DEFENDANT: Yes.
MR. VON TILL: Do you understand what a conviction means? It's the same as a jury finding you guilty or a Judge finding you guilty. Do you understand that?
THE DEFENDANT: Yes.

18

MR. VON TILL: And you do understand what the maximum sentences are?

THE DEFENDANT: Yes.

MR. VON TILL: Understanding those, you are making a statement of your own free will?

THE DEFENDANT: Yes.

MR. VON TILL: And that you haven't been threatened, forced, or pressured in any way to make that guilty plea?

THE DEFENDANT: Yes.

MR. VON TILL: And that you have not received any promise for sentence in exchange for entering that except that which was read into the record at the beginning of the proceedings. Do you understand that?

THE DEFENDANT: Yes.

MR. VON TILL: And you did sign that in my presence and in your presence and Mr. Wiedemer's presence downstairs, the District Attorney's Office a couple days ago?

THE DEFENDANT: Yes.

MR. VON TILL: And that is the sole understanding that exists between the Commonwealth of Pennsylvania and you?

THE DEFENDANT: Yes.

MR. VON TILL: Now, you've read this statement with me and we've discussed it?

THE DEFENDANT: Yes.

and, further:

MR. VON TILL: And are you satisfied that I'm prepared to represent you and proceed to trial if you were not going to plead guilty as you are doing today.

THE DEFENDANT: Yes.

MR. VON TILL: And are you now suffering from any mental illness?

THE DEFENDANT: No.

MR. VON TILL: Are you intoxicated today? Did you have any alcoholic beverages?

THE DEFENDANT: No.

MR. VON TILL: Did you take any drugs this morning or in the last couple of days?

THE DEFENDANT: No.

MR. VON TILL: And you are 20 years of age?

THE DEFENDANT: Yes.

MR. VON TILL: How far did you get in school?

THE DEFENDANT: Eleventh grade.

MR. VON TILL: Do you understand that English language?

THE DEFENDANT: Yes.

MR. VON TILL: And you can read it and write it?

THE DEFENDANT: Yes.

MR. VON TILL: And do you understand what we've discussed today?

THE DEFENDANT: Yes.

Finally, the matter reached its conclusion:

MR. VON TILL: Do you have any other questions?

THE DEFENDANT: No.

MR. VON TILL: Your Honor, I would ask that the pleas be made part of the record.

THE COURT: Jerry, Mr. Von Till has very carefully and in detail explained the rights that you have and the rights that you are giving up. Do you have any questions?

THE DEFENDANT: No.

THE COURT: You want to ask me or him concerning those things?

THE DEFENDANT: No.

THE COURT: You fully understand what's going on?

THE DEFENDANT: Yes.

THE COURT: Now, you are going to be asked to sign in each specific case the informations to which you are pleading guilty. You'll do that after I leave the bench but you'll be asked to sign those and I know it will take some time, so Mr. Von Till will sit with you at the table

20

and make sure you sign the rights ones because a couple of them are not going to be used. You understand, Jerry, if I accept this plea agreement, you are bound by the terms of that plea agreement as it's been explained to you and as I further explained to you?

THE DEFENDANT: Yes.

 In order to ensure that defendants who enter guilty pleas are fully informed of the nature and results of a guilty plea, our courts have provided for strict adherence to detailed procedures in order to effectively plead guilty to criminal charges. *See* Pa.R.Crim.P. 319 (Pleas and Plea Agreements). The exhaustive plea proceedings in this case represent a thorough compliance with the requirement of our rules and cases. To now require the court to conduct a hearing based upon a simple repudiation of all that was said at the guilty plea proceedings *after sentencing,* would depreciate the gravity which our procedures attach to guilty plea proceedings. Here, the record demonstrates that appellant, in open court, persuaded the court to accept his plea and unerringly evinced a full and voluntary understanding of his plea and its ramifications. Under the circumstances, it would be an affront to the dignity of the court and orderly procedures to direct that a hearing must be held because of the naked allegation that defendant's counsel had, prior to the entry of the plea, indicated to the defendant that he would receive a sentence less than the one which defendant unmistakeably agreed was proper under his plea negotiation. We, therefore, hold that the court did not err in refusing to grant a hearing. Our decision has substantial support in the case law. In *Commonwealth v. Brown,* 242 Pa.Super. 240, 363 A.2d 1249 (1976) our court affirmed the denial of P.C.H.A. relief without a hearing. In that case, as here, it was alleged that the defendant was promised sentences at variance with the stated sentence in the colloquy. We affirmed and there stated:

 A criminal defendant who elects to plead guilty has a duty to answer questions truthfully. We can not

permit a defendant to postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel.

*Id.*, 242 Pa.Superior Ct. at 247, 363 A.2d at 1253.

Similarly, in *Commonwealth v. Welch*, 425 Pa. 591, 229 A.2d 737 (1967) our Supreme Court rejected the necessity for a hearing in a P.C.H.A. petition wherein appellant asserted that he was given assurances by his attorney which were at variance with his unequivocal record responses at the time of his plea. *Accord Commonwealth v. Klinger*, 323 Pa.Super. 181, 470 A.2d 540 (1983); *Commonwealth v. Vesay*, 318 Pa.Super. 320, 464 A.2d 1363 (1983); *Commonwealth v. Scott*, 318 Pa.Super. 526, 465 A.2d 678 (1983); *Commonwealth v. Mitchell*, 319 Pa.Super. 170, 465 A.2d 1284 (1983); *Commonwealth v. Egan*, 322 Pa.Super. 71, 469 A.2d 186 (1983); *Commonwealth v. Edrington*, 317 Pa.Super. 545, 464 A.2d 456 (1983); *Commonwealth v. Young*, 245 Pa.Super. 298, 369 A.2d 412 (1976).

■ Despite the fact that, in the main, these cases involve denial of a hearing in P.C.H.A. proceedings we feel that the same principle applies to denial of a hearing in a withdrawal of guilty plea proceeding especially where, as here, the petition was made to the court which accepted the plea, pronounced sentence and consequently is in the best position to determine whether or not the petition merits a hearing.

■ To be sure, there are cases which can be read to support the view that a hearing should be held. In *Commonwealth v. Strader*, 262 Pa.Super. 166, 396 A.2d 697 (1978) our court remanded for a hearing when the P.C.H.A. voluntariness claim was at variance with statements in the guilty plea colloquy. *See also Commonwealth v. Henderson*, 298 Pa.Super. 180, 444 A.2d 720 (1982); *Commonwealth v. Farnwalt*, 286 Pa.Super. 559, 429 A.2d 664 (1981); *Commonwealth v. McCall*, 267 Pa.Super. 351, 406 A.2d

22

1077 (1979). It is true that in "borderline" cases a hearing should be granted. *See Commonwealth v. Strader, supra.* However, this should not lead to the grant of a hearing every time a claim is made that a guilty plea was improperly induced. When the claim (usually one of the promise of a more lenient sentence than the colloquy would permit) in support of withdrawal is clearly contradicted by the unambiguous language of a guilty plea colloquy we should be hesitant to set aside the trial court's determination that a hearing is unnecessary. Indeed, the language of Pa.R. Crim.P. 321 makes it clear that a hearing is not contemplated in every motion to withdraw a guilty plea.

(c) The trial court *may* schedule a hearing on the motion and shall determine whether the motion shall be argued before one judge alone or before a panel of judges sitting as a court *en banc.* Whenever a single judge hears the motion alone, the judge may make any ruling that could be made by a court *en banc.* (Emphasis added.)

We, therefore, reject the claim that the trial court erred in refusing to grant a hearing on the motion to withdraw the guilty plea and that trial counsel was ineffective for promising appellant that he would receive a lesser sentence. Even if evidence of such sentence promises were received, they would be of no avail since this evidence could not be heard to contradict the incontrovertible terms of the record plea. *See Commonwealth v. Edrington, supra; Commonwealth v. Litzenberger,* 333 Pa.Super. 471, 482 A.2d 968 (1984); *Commonwealth v. Garvin,* 335 Pa.Superior Ct. 560, 485 A.2d 36 (1984).

We shall now turn our attention to appellant's issues centering on the sentencing hearing.

At the sentencing hearing, the court heard evidence of appellant's co-operation with authorities and of the broken home from which appellant came. Before pronouncing sentence, the court made this statement:

THE COURT: Well, Jerry, I guess you learned that a synagogue or a church is where good people go to pray.

THE DEFENDANT: Yes, Your Honor.

THE COURT: And most of these or a good many of these crimes involved those places. Jerry, as with the other defendants I have already said something about my thinking as to sentencing. In your particular case I am aware that you are on parole for I think it is a burglary and [defense counsel] has explained how that happened and when it happened. I figured out here what the maximum term could have been about a hundred and sixty-seven years. I don't think I would have done that to you. You are lesser in the group that agreed to a cap of ten to twenty, but it doesn't really make a difference when you look at it because there are so many crimes committed. You admitted to four burglaries as well as the other crimes of corrupt organizations. And when I tried to distinguish between you because of that cap I can't, and I know that you tried to cooperate and that is why I am not disturbed with the cap that was placed. But obviously, as [defense counsel] has conceded, I could not think of putting you on probation. I have to go through that and take that step, but you are not a fit subject for probation and then you compounded these crimes by the silly thing you did involving the police. You pleaded guilty to resisting arrest, but the facts of the case could have been much more serious. Fortunately they weren't. So the very people who were involved in the investigation of these sickening crimes had a problem with you and I can't forget that. I can't let the police think that society is not interested in their protection when they are doing their duty and doing a good job as they did in this case. So I have considered all of those things. I know something about you from reading the presentence investigation and from what defense counsel has told me. I know about the needs of the community. I have said it before, the community has to be protected. It cannot be ravaged as it has been in these series of

events and I have put a message out and I intend to do that.

The court then sentenced appellant to a term of ten to twenty years on each of the counts of burglary and on the one count of conspiracy, plus sentences of two to four years for simple assault and one to two years on the four remaining counts of conspiracy and for possession of a controlled substance. All sentences were ordered to run concurrently.

Regarding his sentence, appellant argues first that the court did not assign adequate reasons for the imposition of sentence, and, second, that the sentence imposed was manifestly excessive. In the seminal case of *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977), the Supreme Court ruled that a sentencing court must place its reasons for a sentence on the record to show that the court took into consideration the sentencing guidelines enumerated by the Legislature. The factors listed by the Legislature as supporting a sentence of total confinement include a consideration that there is an undue risk that, if given probation or partial confinement, the defendant would commit another crime; that the defendant is in need of correctional treatment and, that a lesser sentence will depreciate the seriousness of the crime committed by the defendant.[2]

 A review of the record of sentencing reveals that the court took many factors into consideration as sentencing. The court acknowledged appellant's co-operation with authorities, but the court also noted that appellant committed a great number of crimes and was presently on parole. The court further noted that when appellant was arrested, he resisted arrest. Citing the above factors, the court found appellant not to be a fit subject for probation, a conclusion, as the court observed, in which even defense counsel concurred. The court additionally stated that by its sentence, it was endeavoring to protect the community and, further, "to put a message out", which is another way of saying

2. 42 Pa.C.S. § 9725.

that a lesser sentence would depreciate the seriousness of the offenses.

We find the above reasons to be adequate. Although the sentencing judge did not specifically refer to sections in the Sentencing Code, it has been held that a court is not required to list the criteria of the Code and detail his response to each section. *Commonwealth v. Stufflet*, 291 Pa.Super. 516, 436 A.2d 235 (1981). In the instant case, the sentencing court weighed appellant's character as a repeat offender against the need of the community to be protected. Thus, the court exhibited its consideration of the relevant factors. *Commonwealth v. Valentin*, 259 Pa.Super. 496, 393 A.2d 935 (1978).

■ Furthermore, the sentence was not manifestly excessive. As the court observed at sentencing, had appellant not entered into the agreement with the Commonwealth, appellant could have received a sentence of one hundred and sixty-seven years. Appellant's sentence of ten to twenty years was well within that allowed by law. Also, as was previously discussed, the court adequately listed its reasons for the sentence. We, therefore, do not find the sentence to be manifestly excessive. *Commonwealth v. Valentin*, *supra*.

Judgment of sentence affirmed.

SPAETH, President Judge, files concurring opinion.

CERCONE, J., did not participate in the consideration or decision of this case.

SPAETH, President Judge, concurring:

I agree that the judgment of sentence should be affirmed. However, I should rest that conclusion on the vagueness of the motion to withdraw the guilty plea, without reaching the issue of when, or whether, a defendant by specific motion to withdraw a plea may contradict what was said in the colloquy incident to acceptance of the plea.