J-S25010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KENNETH  PERALTA :
:
Appellant : No. 994 MDA 2019

Appeal from the PCRA Order Entered May 28, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0004271-2011


BEFORE:  LAZARUS, J., DUBOW, J., and KING, J.

MEMORANDUM BY LAZARUS, J.:              **FILED SEPTEMBER 28, 2020**

Kenneth Peralta appeals from the order, entered in the Court of Common Pleas of Lancaster County, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  Upon careful review, we affirm.

> The pertinent facts are easily summarized as follows:  On September 17, 2012, Peralta [entered an open guilty plea] to attempted homicide, robbery, two firearm violations, and retail theft after he shot a loss prevention officer while trying to flee a local grocery store with stolen items.  On November 19, 2012, the trial court sentenced him to an aggregate term of 25 to 70 years of imprisonment.  Peralta filed a timely appeal to this Court following the denial of his post-sentence motion, and we affirmed his judgment of sentence in an unpublished memorandum filed on October 31, 2013.  ***Commonwealth v. Peralta***, No. 154 MDA 2013 [(Pa.  Super.  filed  Oct.  31,  2013)  (unpublished memorandum)].
>
> The procedural history that follows is not as simple, and requires a detailed recitation:  On June 16, 2014, Peralta filed a *pro se* PCRA petition in which he raised claims of ineffective assistance

of counsel in connection with the entry of his guilty plea. On July 25, 2014, the PCRA court appointed R. Russel Pugh, Esquire[,] to assist Peralta. On September 19, 2014, Attorney Pugh filed an amended petition on Peralta's behalf. Rather than raising ineffectiveness claims, the amended petition raised only a claim that Peralta's aggregate sentence was illegal in light of **Alleyne v. U.S.**, 133 S.Ct. 2151 (2013), and **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014).

By agreement of the parties, the PCRA court, on October 20, 2014, stayed Peralta's PCRA petition pending the Pennsylvania Supreme Court's decision in **Commonwealth v. Hopkins**, 117 A.3d 247 (Pa. 2015). On June 5, 2015, our Supreme Court in **Hopkins** held that the procedure for imposing a two-year mandatory minimum sentence for certain drug offenses committed within 1,000 feet of a school, 18 Pa.C.S.A. § 6317, was unconstitutional in light of **Alleyne**, and that these provisions were not severable from the remainder of the statute, thereby rendering the entire statute involving mandatory minimum sentences unconstitutional. **See id.**

On June 22, 2015, the Commonwealth filed a response to Peralta's amended PCRA [petition] in which it averred that Peralta's aggregate sentence did not include a mandatory minimum sentence. On September 9, 2015, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Peralta's amended petition without a hearing.[1]

> [1] According to this notice, "[b]oth parties agreed that a hearing on the amended petition was unnecessary, and the issue was submitted to the Court for a decision." Rule 907 Notice, 9/9/15, at 4.

Although still represented by Attorney Pugh, on October 19, 2015, Peralta filed a *pro se* motion for extension of time in which to respond to the court's Rule 907 notice. Attached as an exhibit was a September 18, 2015 [letter], in which Attorney Pugh informed Peralta that his aggregate sentence was not illegal, because the trial court sentenced him to a higher minimum sentence at the applicable counts than the now unconstitutional five-year mandatory minimum. In this letter, Attorney Pugh stated that he would file the appeal, but told Peralta he would also be filing a "motion to withdraw as your attorney per the **Turner**/[**Finley**] line of cases. You will be free to make whatever arguments you wish to the Superior Court." Letter, 10/19/15, at

1.

Although Attorney Pugh remained counsel of record, the trial court, by order entered October 30, 2015, granted Peralta an additional thirty days to file his Rule 907 *pro se* response. On December 7, 2015, Peralta filed another PCRA petition in which he raised multiple claims of plea counsel's ineffectiveness and, referring to Attorney Pugh's letter, requested that Attorney Pugh withdraw from the case.

By order entered December 9, 2015, the PCRA court referred Peralta's filing, which the court characterized as an amended petition, to Attorney Pugh, "for whatever action is deemed appropriate." On December 11, 2015, Peralta filed a *pro se* objections/response to the PCRA court's Rule 907 notice. In his response, Peralta reiterated that[,] in his second PCRA petition, he had asserted Attorney Pugh's ineffective assistance in that Attorney Pugh waived his original claims of plea counsel's ineffectiveness that were raised in the original *pro se* PCRA petition [] and in failing to request an evidentiary hearing. In addition, Peralta again requested Attorney Pugh's removal as PCRA counsel.[2] There is no indication in the record that this letter was forwarded to Attorney Pugh.

> [2] Peralta also addressed the purported illegality of his sentence, and requested that his second PCRA petition be incorporated into his response.

In a letter to the PCRA court dated December 15, 2015, a copy of which was sent to Peralta and the Commonwealth, Attorney Pugh addressed the two "new" ineffectiveness claims involving appellate and plea counsel that Peralta wished to raise and explained why they were without merit. In concluding, Attorney Pugh informed the court that he "can find no grounds to further amend [Peralta's] Amended PCRA [petition], nor to file anything else, as a consequence of his most recent *pro se* petition." Letter, 12/15/15, at 1-2. After this correspondence, a conflict of interest arose in the Lancaster Court of Common Pleas due to Peralta's plea counsel being elected to the bench. Because of this conflict, [Peralta's] case was transferred to the Montgomery County Court of Common Pleas.

On January 27, 2016, Peralta filed a "Follow Up on the Objections to the 907 Notice filed 9/9/15." In this document, he once again reminded the PCRA court that he had previously

raised Attorney Pugh's ineffectiveness for abandoning the claims of plea counsel's ineffectiveness that he raised in his original *pro se* PCRA petition. In closing, Peralta requested that "new counsel be appointed to present all issues raised in [my] initial PCRA [petition] and [my] objections to the Rule 907 notice." Follow Up, 1/27/16, at 2.

On March 13, 2017, the Honorable Arthur R. Tilson, Senior Judge, entered [an] order [dismissing Peralta's PCRA petition without a hearing for the reasons stated in its September 9, 2015 Rule 907 notice].

Referencing [that] order, Attorney Pugh filed a motion to withdraw as counsel on March 18, 2017. The PCRA court granted Attorney Pugh's motion on March 27, 2017.[3]

> [3] The certified record also includes an April 5, 2017 praecipe filed by Attorney Pugh to withdraw his appearance as Peralta's attorney.

***Commonwealth v. Peralta***, 710 MDA 2017 at 1-5 (Pa. Super. filed May 31, 2018) (unpublished memorandum).

Peralta timely appealed, arguing that the PCRA court violated Pa.R.Crim.P. 904(C) by allowing Attorney Pugh to withdraw. This Court agreed, reasoning that "Peralta has effectively been denied his rule-based right to counsel throughout the litigation of his PCRA petition and on appeal."[1]

_____

[1] This Court further explained:

> [A]lthough as early as September 2015 Attorney Pugh informed Peralta that he would be filing a motion to withdraw pursuant to the "***Turner***/[***Finley***]" line of cases, he never did so. Attorney Pugh's December 15, 2015 letter to the PCRA court, which did not address Peralta's claims regarding Pugh's ineffectiveness for abandoning his claims of plea counsel's ineffectiveness, clearly did not satisfy the ***Turner***/***Finley*** requirements, ***see id.***, and nowhere in the letter does Attorney Pugh request to withdraw. Instead, Attorney Pugh filed a motion to withdraw only after the

*Id.* at 7. Consequently, we vacated the PCRA court's March 13, 2017 order denying Peralta's petition, and remanded for the PCRA court to appoint new counsel to assist him in litigating the claims of plea counsel's ineffectiveness as originally raised. *See id.*

On July 18, 2018, the PCRA court appointed counsel, who filed a *Turner*/*Finley* "no-merit" letter on December 10, 2018. On May 1, 2019, the PCRA court issued its Rule 907 notice of intent to dismiss Peralta's petition, and Peralta filed objections thereto on May 20, 2019. On May 28, 2019, the PCRA court dismissed Peralta's PCRA petition without a hearing, and Peralta timely filed a notice of appeal on June 17, 2019. On June 21, 2019, the PCRA court ordered Peralta to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Thereafter, upon discovering that Peralta had not received the Rule 1925(b) order in the mail, the PCRA court issued a second order on September 24, 2019, directing Peralta to file a Rule 1925(b) statement. On October 6, 2019, Peralta complied. He raises the following issues for our review:

1. Whether the PCRA court erred as a matter of law when it failed to vacate [Peralta's] sentence when such was imposed under an unconstitutional statute where no statutory authority exists,

---

PCRA court entered its March 13, 2017 order denying Peralta's petition. In addition, Attorney Pugh never filed an appeal on Peralta's behalf, but rather, Peralta filed a *pro se* notice of appeal as instructed in the March 13, 2017 order.

*Commonwealth v. Peralta*, 710 MDA 2017 at 1-5 (Pa. Super. filed May 31, 2018) (unpublished memorandum).

in violation of **Alleyne v. United States**, 133 S.Ct. 2151 (2013).

2. Whether counsel provided ineffective assistance during the guilty plea phase rendering the plea involuntary and not intelligently knowing since [Peralta] was misadvised by counsel that he would receive a lesser sentence than the imposed sentence because guilty plea counsel was previously a clerk for the sentencing judge and whether the factual findings are correct?

Brief of Appellant, at 4.

When reviewing the denial of a PCRA petition, we must determine whether the PCRA court's order is supported by the record and free of legal error. **Commonwealth v. Smith**, 181 A.3d 1168, 1174 (Pa. Super. 2018). With regard to the court's legal conclusions, we apply a *de novo* standard. **Id.**

First, Peralta claims that with regard to his conviction for persons not to possess, use, or manufacture a firearm, he received a mandatory-minimum sentence pursuant to 42 Pa.C.S.A. § 9712, and that this sentence is illegal pursuant to **Alleyne** and **Commonwealth v. Newman**, 99 A.3d 86 (Pa. Super. 2014) (en banc) (finding that **Alleyne** renders sentencing practice under section 9712.1 unconstitutional). Peralta submits that with "regard to [this charge], the court imposed a consecutive sentence of five [] to ten [] years indicating there was 'a mandatory minimum sentence for visible possession of a firearm.'" Brief of Appellant, at 8.

The record belies Peralta's claim. Upon review of the guilty plea hearing and sentencing transcripts, it is clear that the trial court did not impose a mandatory minimum sentence pursuant to section 9712 for Peralta's

conviction for persons not to possess a firearm.[2] At Peralta's guilty plea hearing, the trial court explained to him that, with regard to persons not possess a firearm,

> [T]he offense gravity score is a 10.[3] The standard range is 60 months to 72 months[.]. . . . So, basically, under the guidelines, you're at the top of the range for all these offenses. . . . **Now, also you're subject to certain mandatory minimum sentences. That is the one for the visible possession of the firearm used in the commission of this crime. That would apply to the criminal attempt at homicide and to the robbery.**[4] And this is a second strike offense, which has the mandatory minimum sentence of 10 years because you have a prior Felony 1 conviction for aggravated assault.[5]

N.T. Guilty Plea Hearing, 9/17/12, at 37-38 (emphasis added).

At sentencing, the trial court reiterated, after discussing the standard range of sentences for counts one, two, and three, given Peralta's prior record score of five, that, "[t]he person not to possess a firearm [charge] has an offense gravity score of 10. The standard range would be 60 to 72 months.

---

[2] Primarily, we note that persons not to possess a firearm is not an offense to which section 9712 applies. **See** 42 Pa.C.S.A. § 9712 (mandatory minimum sentence for visible possession of firearm during crime of violence); **see also** 42 Pa.C.S.A. § 9714(g) (crimes of violence does not include persons not to possess a firearm).

[3] Because Peralta was previously convicted of aggravated assault, an enumerated offense under 42 Pa.C.S.A. § 6105(b), his offense gravity score for violating section 6105(a) is ten. **See** 42 Pa.C.S.A. § 6105; 204 Pa. Code. § 303.15.

[4] 42 Pa.C.S.A. § 9712.

[5] **See** 42 Pa.C.S.A. § 9714 (sentences for second and subsequent crimes of violence).

The aggravated range would add 12 months to those numbers and the mitigated range would take 12 months away." N.T. Sentencing, 11/21/12, at 4. The trial court continued by noting, as it had done at the time of Peralta's guilty plea, that "[t]here is a mandatory minimum sentence for the visible possession of a firearm. That's five years. And the second strike offense, because of the prior aggravated assault, the mandatory minimum sentence would be 10 years." *Id.*

The basis for Peralta's claim on appeal appears to be that this "mandatory minimum sentence" comment followed the trial court's reference to his conviction for persons not to possess a firearm at sentencing. When the sentencing transcript is read as a whole however, and in conjunction with Peralta's guilty plea hearing transcript, it refutes his argument. The trial court made clear that the only mandatory minimum sentences applicable to Peralta were those for his attempted homicide and robbery convictions, not his conviction for persons not to possess a firearm. *See* N.T. Sentencing, 11/21/12, at 2-5; N.T. Guilty Plea Hearing, 9/17/12, at 37-38. This is entirely consistent with section 9712.[6]

---

[6] Section 9712 provides that,

> any person who is convicted in any court of this Commonwealth of **a crime of violence as defined in section 9714(g)** (relating to sentences for second and subsequent offenses), shall, **if the person visibly possessed a firearm** or a replica of a firearm, whether or not the firearm or replica was loaded or functional,

Furthermore, the trial court thoroughly explained its reasoning for imposing Peralta's individualized sentence, having considered, *inter alia*: the charging documents; a presentence investigation report; Peralta's family situation; his prior juvenile and criminal records; his educational, employment, substance abuse, and medical history, including a psychological evaluation and a drug and alcohol evaluation; his rehabilitative needs; the safety of the community; a letter written by Peralta; his allocution at sentencing; his demonstrated lack of remorse and personal responsibility; the

---

> that placed the victim in reasonable fear of death or serious bodily injury, during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary.

*Id.* (emphasis added). Section 9714 defines "crime of violence" as:

> murder of the third degree, voluntary manslaughter, manslaughter of a law enforcement officer[,] . . . murder of the third degree involving an unborn child[,] . . . aggravated assault of an unborn child[,] . . . aggravated assault[,] . . . assault of law [a] enforcement officer[,] . . . use of weapons of mass destruction[,] . . . terrorism[,] . . . strangulation when the offense is graded as a felony[,] . . . trafficking of persons when the offense is graded as a felony of the first degree[,] . . . rape, involuntary deviate sexual intercourse, aggravated indecent assault, incest, sexual assault, arson endangering persons or aggravated arson[,] . . . ecoterrorism[,] . . . kidnapping, burglary[,] . . . **robbery**[,] . . . or robbery of a motor vehicle, drug delivery resulting in death[,] . . . or **criminal attempt**, criminal conspiracy[,] or criminal solicitation **to commit murder or any of the offenses listed above**, or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction.

42 Pa.C.S.A. § 9714 (emphasis added).

victim impact statement; arguments of counsel; the sentencing guidelines; and the penalties authorized by law. *See* N.T. Sentencing, 11/21/12, at 28-39. In addition, Peralta's sentence of five to ten years' imprisonment for persons not to possess, given his prior record score of five, is within the standard range of the sentencing guidelines. *See* 204 Pa. Code § 303.16(a); *see also Commonwealth v. Zeigler*, 112 A.3d 656, 662-63 (Pa. Super. 2015) (sentence for aggravated assault imposed under illegal mandatory minimum in section 9712 "is not illegal on that ground" where court states independent reasons for sentence and sentence falls within standard sentencing guidelines). Thus, Peralta's claim fails.

Next, Peralta claims that plea counsel was ineffective, rendering his plea invalid, in that his plea was not knowingly, voluntarily, and intelligently entered. He argues that he "was misadvised by counsel that he would receive a lesser sentence than the one imposed because guilty plea counsel was previously a clerk for the sentencing judge." Brief of Appellant, at 12.

It is well-established that counsel enjoys a presumption of effectiveness, and it is the PCRA petitioner's burden to overcome that presumption. *Commonwealth v. Brooks*, 839 A.2d 245 (Pa. 2003). In order to establish ineffective assistance, a petitioner must show that his claim is of arguable merit, his counsel's performance lacked a reasonable basis, and counsel's performance caused him prejudice—i.e., but for counsel's error, the outcome of the proceeding would have been different. *Id.*

> Claims of counsel's ineffectiveness in connection with a guilty plea will provide a basis for relief only if the ineffectiveness caused an involuntary or unknowing plea. This is similar to the "manifest injustice" standard applicable to all post-sentence attempts to withdraw a guilty plea. The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty. All that is required is that [his] decision to plead guilty be knowingly, voluntarily, and intelligently made.

*Commonwealth v. Yager*, 685 A.2d 1000, 1004 (Pa. Super. 1996) (en banc) (internal citations, quotation marks, and brackets omitted). The voluntariness of a guilty plea must be determined based on the totality of the circumstances. *Id.*

Peralta argues that his guilty plea was involuntary because plea counsel assured him that if he pled guilty, he would receive a sentence of not more than 17½ to 35 years. "This . . . belief was premised on [plea counsel]'s relationship with the sentencing judge, [the Honorable] James P. Cullen, as [plea counsel] was previously a clerk for the judge." Brief of Appellant, at 12. To support this position, Peralta submitted affidavits from two individuals who purportedly overheard conversations to this effect between Peralta and plea counsel in jail. *See* PCRA Petition, 6/14/16, Ex. C., Affidavit of Jose Ramos; Ex. D., Affidavit of Jarvis Jamison. As the PCRA court correctly noted, however, "[e]xamination of the affidavits [indicates] that the agreement mentioned in the conversation and nearly put in place was actually between [p]lea [c]ounsel and the Commonwealth." Pa.R.Crim.P. 907 Notice, 4/30/19, at 7-8 (unnumbered pages); Order, 10/24/19 (relying on and incorporating same for compliance with Pa.R.A.P. 1925(a)). There is no mention in either

affidavit, or elsewhere in the record, of any relationship, expectation, promise, or agreement between plea counsel and the sentencing judge. *See* PCRA Petition, 6/14/16, Ex. C., Affidavit of Jose Ramos; Ex. D., Affidavit of Jarvis Jamison.

Indeed, Peralta's written and oral guilty plea colloquies demonstrate that at the time of his guilty plea, he had no expectation of any specific sentence, and had not been made any promise in exchange for his agreement to plead guilty.

> The Court:  Whose decision is it to plead guilty?
>
> [Peralta]:  Mine, Your Honor.
>
> The Court:  Have you been forced, threatened, or pressured in any manner to make you plead guilty?
>
> [Peralta]:  No, Your Honor.
>
> The Court:  Now, do you understand that this is what we refer to as a straight or open plea of guilty?
>
> [Peralta]:  Yes, Your Honor.
>
> The Court:  **That means there's no agreement to the sentence.**
>
> [Peralta]:  **I understand.**

N.T. Sentencing, 11/21/12, at 33 (emphasis added); *see also* Guilty Plea Colloquy and Post-Sentence Rights, 9/17/12.[7]

---

[7] Peralta indicated the following in his written guilty plea colloquy:

"It is a well[-]settled principle of law that a criminal defendant who elects to plead guilty has a duty to answer questions truthfully." **Commonwealth v. Myers**, 642 A.2d 1103, 1107 (Pa. Super. 1994) (quotations and brackets omitted), quoting **Commonwealth v. Cappelli**, 489 A.2d 813, 819 (Pa. Super. 1985) (en banc).  Thus, Peralta "is bound by [his]

_____

7.  Do you understand that you are here today to enter a plea of guilty to some or all of the criminal charges against you? [Answer:]  Yes.

* * *

35.  Do you understand that the total possible sentence you could receive for your plea today if you were sentenced to the maximum and all sentences were consecutive would be 77 years, 90 days, and $115,300?  [Answer:] Yes.

36.  Have you, your lawyer, and the District Attorney entered into any negotiated plea agreement?  [Answer:] No.

* * *

45.  If there is not a plea agreement, do you understand that it is the judge who will determine your sentence?  [Answer:] Yes.

* * *

49.  Is it your decision to plead guilty?  [Answer:] Yes.

50.  Have you been threatened or forced to plead guilty? [Answer:] No.

51.  Are you making the decision to plead guilty of your own free will?  [Answer:] Yes.

52.  **Have any promises been made to you to enter this guilty plea** other than the terms of the plea agreement? [Answer]: **No.**

Guilty Plea Colloquy and Post-Sentence Rights, 9/17/12 (emphasis added).

- 13 -

statements made during [his] plea colloquy, and may not successfully assert claims that contradict such statements." ***Commonwealth v. Muhammad***, 794 A.2d 378, 384 (Pa. Super. 2002) (rejecting appellant's claim that plea counsel coerced him into pleading guilty where, prior to entry of plea, upon being asked whether decision to enter guilty plea was voluntary, appellant testified, "I don't understand about voluntary. . . . Nobody ain't threatening me [sic], but they['re] saying that they can't beat the case."). Therefore, Peralta's second claim fails.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/28/2020