J-S25024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
EDDIE BELL :
:
Appellant : No. 1708 EDA 2022

Appeal from the PCRA Order Entered June 1, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0003381-2013

BEFORE:  NICHOLS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED AUGUST 30, 2023**

Eddie Bell (Appellant) appeals from the order dismissing his first petition

filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–

9546.  We affirm.

This Court previously explained:

> On March 19, 2014, a jury found Appellant guilty of first-
> degree murder, possession of an instrument of crime, and two
> violations of the Uniform Firearms Act.  The convictions were
> premised upon the following events.  At approximately 5:30 a.m.
> on May 27, 2012, [] Sirmar Morris [the victim], and Dante Hines
> [Hines], Appellant's brother, had an argument at an after-hours
> establishment in Philadelphia.  [The victim] purportedly displayed
> a gun during the incident.  Hines then went to Appellant's house,
> where Hines had arranged to obtain a ride to his own home from
> Will Duncan [Duncan].  Hines told Appellant about the argument
> with [the victim].
>
> Appellant, who had a gun, informed Hines that he was going
> to take care of the situation.  [] Duncan, accompanied by Martinez
> Green [Green], arrived at Appellant's home in a tan minivan.
> Appellant and Hines entered the van.  As Duncan was driving down

23rd Street, Hines saw [the victim] walking down the same street and pointed him out to Appellant. Duncan stopped the vehicle so that Appellant could exit. Hines then heard shots, and Appellant came running back toward the van. Duncan drove away.

At that time, Philadelphia Police Officer Thomas Bimble was in his cruiser just outside the police headquarters located about one block away from the crime. He heard the gunshots fired by Appellant and immediately drove to the location of the shooting. Officer Bimble saw Duncan's van speeding from the scene, started to follow it, and broadcasted his location to other police units. The van continued driving at a high rate of speed but was spied by other officers. Appellant was soon apprehended by Philadelphia [police officers]. A 9 mm Smith & Wesson handgun was found near the location of Appellant's detention. Appellant's DNA was on the weapon. The other individuals in Duncan's van were apprehended by other Philadelphia police officers. [At the time of his arrest, Green was in possession of a 9 mm Glock 17. However, ballistics testing excluded it as the murder weapon.]

[The victim] was shot with a 9 mm Smith & Wesson handgun; three bullets entered the victim. [The victim] also sustained shrapnel gunshot wounds, and a graze wound at the top of his left shoulder. Appellant shot at the victim a total of eight times. [The victim] was transported by ambulance to the Hospital of the University of Pennsylvania, where he was pronounced dead. The bullet that killed the victim entered the right side of his chest, and it traveled through his liver, aorta, and both lungs.

Immediately after the jury rendered its verdict, the trial court imposed a sentence of life imprisonment[.]

**Commonwealth v. Bell**, 125 A.3d 438 (Pa. Super. 2015) (1235 EDA 2014, unpublished memorandum, at 1-3).

On July 7, 2015, this Court affirmed Appellant's judgment of sentence. **Id.** The Pennsylvania Supreme Court denied allowance of appeal on March 9, 2016. **Commonwealth v. Bell**, 134 A.3d 53 (Pa. 2016).

The PCRA court explained:

[Appellant subsequently] filed a timely *pro se* PCRA petition on September 20, 2016, [and] a supplemental addendum on January 12, 2017[. The PCRA court appointed counsel, who filed an] amended PCRA petition on July 6, 2017. [Appellant] filed a second supplemental addendum to his *pro se* petition on September 15, 2017, and his third on October 6, 2017. On September 29, 2017, [Appellant] filed *pro se* correspondence entitled "Opposition to PCRA Counsel's Deletion of Claims from the Original PCRA Petition."

[On] November 22, 2017, the Commonwealth filed its motion to dismiss. On May 24, 2018, [the PCRA c]ourt issued a [Pa.R.Crim.P.] 907 Notice and, on October 18, 2018, dismissed [Appellant's] PCRA petition. [Appellant appealed to the Superior Court, and, at the request of Appellant and the PCRA court, the dismissal order] was subsequently vacated on May 20, 2019[. The case was] remanded to the PCRA court, and [Appellant] filed numerous amended petitions thereafter. On October 25, 2019, Coley Reynolds[, Esquire,] was appointed as PCRA counsel, and on January 30, 2020, Reynolds filed [a no-merit letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*),] and motion to withdraw. [The PCRA c]ourt ordered counsel to conduct additional review of the issues raised by [Appellant], after which counsel filed a supplemental ***Finley*** letter on November 20, 2020. [The PCRA c]ourt issued a Rule 907 Notice on December 22, 2020. [Appellant] filed a *pro se* response to the court's [Rule] 907 Notice on January 6, 2021, at which point counsel was again ordered to conduct additional review of the issues raised by [Appellant]. Counsel then filed an amended [PCRA] petition and supporting brief on April 15, 2021. The Commonwealth filed its answer to the amended petition on September 17, 2021. On April 7, 2022, [the PCRA c]ourt submitted [Rule] 907 [notice], to which [Appellant] filed a Response on April 22, 2022. On June 1, 2022, [the PCRA c]ourt filed an order formally dismissing the PCRA petition.

[Appellant] filed a timely notice of appeal to the Superior Court on June 24, 2022, and on July 14, 2022, [the PCRA c]ourt issued an order requesting [Appellant] file a concise statement of [errors] complained of on appeal pursuant to Pa.R.A.P. 1925(b).

PCRA Court Opinion, 10/28/22, at 2-3 (capitalization modified, footnotes omitted).

Appellant retained new counsel, who filed a Rule 1925(b) statement on August 10, 2022. Counsel raised numerous layered claims of ineffective assistance of prior PCRA counsel and trial counsel. The PCRA court issued an opinion addressing the merits of the new claims on October 28, 2022.

Appellant raises the following issues:

I. Did the PCRA court err when it found that trial counsel was not ineffective, violating the Sixth and Fourteenth Amendments, for 1) failing to properly object to the instruction given by the court on [18 Pa.C.S.A. §] 6104 in relation to the charge of murder and/or for 2) failing to ask the court to additionally instruct the jury that they could use the gun[-]related evidence as one item of circumstantial evidence in determining whether Appellant was guilty of the crime of voluntary manslaughter[]; was PCRA counsel ineffective for failing, to properly develop, present and argue this claim?

II. Was PCRA counsel ineffective for failing to properly plead, argue, and preserve multiple meritorious claims that Appellant specifically asked PCRA counsel to assert in his PCRA petition and which PCRA counsel ineffectively omitted/abandoned?

A. Was trial counsel ineffective under the Sixth and Fourteenth Amendment[s] for advising the Appellant to reject the plea offer from the Commonwealth of 25 to 50 years (20 to 40 years from Third Degree Murder and 5 to 10 on the gun charge)?

B. Was trial counsel ineffective under the Sixth and Fourteenth Amendments for failing to amend the *pro se* motion to suppress and/or file a counseled motion to suppress challenging the credibility and reliability of the evidentiary basis for the vehicle stop?

C. Was trial counsel ineffective under the Sixth and Fourteenth Amendments for advising the Appellant to

not testify in his own defense as to the Appellant's lack of specific intent, including but not limited to his mental and physical state at the time of the incident and his belief that he needed to act in self-defense?

D. Was trial counsel ineffective under the Sixth and Fourteenth Amendments for not objecting and seeking a continuance after Appellant advised the court and counsel during the colloquy of the Appellant that he was at that time under the influence of drugs, alcohol, and other intoxicants, rendering him impaired and his waiver of his constitutional right to testify on his own behalf involuntary and unknowing?

E. Was trial counsel ineffective under the Sixth and Fourteenth Amendments for failing to object, move to suppress and give a curative instruction to the trial testimony of the victim[']s mother, Kathy Morris[,] when Ms. Morris had previously violated the sequestration order imposed at the preliminary hearing?

F. Was trial counsel ineffective under the Sixth and Fourteenth Amendments for failing to ask for a continuance in order to retain and consult with a gunshot sound expert after the Commonwealth, without providing any advance notice to the defense, elicited speculative testimony from Police Officer B[]imble as an expert in the sound of gunshots opining as to the number of guns that were fired?

G. Was trial counsel ineffective under the Sixth and Fourteenth Amendments for failing to timely object, move to strike, seek a mistrial or a curative instruction after the Commonwealth introduced evidence that [] Green had been charged with unrelated gun offenses?

H. Was trial counsel ineffective under the Sixth and Fourteenth Amendments for failing to have the victim's clothing and hands tested for [gunshot residue (GSR)] when it was alleged that the victim possessed a gun, was acting aggressive with it and fired it at the Appellant?

I. Was trial counsel ineffective under the Sixth and Fourteenth Amendments for failing to object to the jury being given the same instruction in relation to the inference portion of the first degree (intent) and third degree (malice) murder crimes?

Appellant's Brief at 3-5 (capitalization and punctuation modified).

We review the PCRA court's denial of relief by "examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." *Commonwealth v. Busanet*, 54 A.3d 35, 45 (Pa. 2012). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." *Id.*

> [T]he PCRA court has the discretion to dismiss a petition without a hearing when the court is satisfied "that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by any further proceedings." Pa.R.Crim.P. 909(B)(2). "[T]o obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. D'Amato*, 856 A.2d 806, 820 (Pa. 2004).

*Commonwealth v. Hanible*, 30 A.3d 426, 452 (Pa. 2011).

Instantly, Appellant claims trial and PCRA Counsel were ineffective. It is well-settled that

> counsel is presumed to have been effective and [] the petitioner bears the burden of proving counsel's alleged ineffectiveness. *Commonwealth v. Cooper*, 941 A.2d 655, 664 (Pa. 2007). To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and

- 6 -

(3) the petitioner suffered prejudice as a result of counsel's deficient performance, "that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different." ***Id.*** A PCRA petitioner must address each of these prongs on appeal. ***See Commonwealth v. Natividad***, 938 A.2d 310, 322 (Pa. 2007) (explaining that "appellants continue to bear the burden of pleading and proving each of the [foregoing ineffectiveness prongs] on appeal to this Court"). A petitioner's failure to satisfy any prong of this test is fatal to the claim. ***Cooper***, 941 A.2d at 664.

***Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018) (citations modified). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." ***Commonwealth v. Taylor***, 933 A.2d 1035, 1042 (Pa. Super. 2007) (citation omitted).

In ***Commonwealth v. Bradley***, 261 A.3d 381 (Pa. 2021), our Supreme Court held "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." ***Id.*** at 401. This is Appellant's first PCRA petition. Because he raised his claims at the first opportunity following the dismissal of his PCRA petition and the entry of appearance of new counsel, ***Bradley*** applies.

"Where a petitioner alleges multiple layers of ineffectiveness, he is required to plead and prove, by a preponderance of the evidence, each of the three prongs of ineffectiveness relevant to each layer of representation." ***Commonwealth v. Parrish***, 273 A.3d 989, 1003 n.11 (Pa. 2022).

In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of

- 7 -

counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue.

***Commonwealth v. Burkett***, 5 A.3d 1260, 1270 (Pa. Super. 2010).

In his first issue, Appellant argues trial counsel was ineffective for failing to properly object to the following jury charge:

> Now, in this case **if** you find that the defendant used a firearm in committing the acts constituting the violation of the offense of murder and that the defendant did not have a license to carry that firearm as required by law[] you **may regard that as one item of circumstantial evidence on the issue of whether the defendant intended to commit the crime of murder. It is for you to decide what weight, if any, you will give to that item of circumstantial evidence. Evidence of non-licensure alone is not sufficient to prove that the defendant intended to commit the offense of murder.**

N.T., 3/18/14, at 130 (emphases added). Although trial counsel took an exception to the non-licensure charge, Appellant contends counsel was ineffective for

> failing to properly object to [this jury] instruction … and/or for [] failing to ask the [trial court as part of its charge on voluntary manslaughter] to additionally [give the jury the same instruction]; PCRA counsel was ineffective for failing to properly develop, present and argue this claim.

Appellant's Brief at 11; ***see id.*** at 11-19.

Appellant did not raise this claim in his Rule 1925(b) statement; instead, he claimed trial counsel was ineffective for "failing to object to the instruction given by the [trial c]ourt[.]" Statement of [Errors] Complained of on Appeal, 8/10/22, at 2 (unnumbered). Consequently, in its Rule 1925(a) opinion, the PCRA court did not address whether trial counsel made a "proper objection"

- 8 -

to the inference, but only whether trial counsel made *any* objection to the jury instructions. **See** PCRA Court Opinion, 10/28/22, at 9; N.T., 3/18/14, at 9-10.[1]

An appellant cannot raise an issue for the first time on appeal. **See** Pa.R.A.P. 302(a). Moreover, issues not raised in a court-ordered 1925(b) statement are waived. Pa.R.A.P. 1925(b)(4)(vii); **see also Commonwealth v. Given**, 244 A.3d 508, 510 (Pa. Super. 2020) (appellant waived all issues on appeal by failing to raise them in his Rule 1925(b) statement); **Commonwealth v. Lord**, 719 A.2d 306, 308 (Pa. 1998), **superseded by rule on other grounds in Commonwealth v. Burton**, 973 A.2d 428, 431 (Pa. Super. 2009). Appellant has waived his issue regarding trial counsel's "proper objection" to the jury charge.

Even if not waived, the claim would not merit relief. Appellant failed to demonstrate that an objection to the inference would have been successful. Crimes Code Section 6104 provides:

> In the trial of a person for committing or attempting to commit a crime enumerated in section 6105 (relating to persons not to possess, use, manufacture, control, sell or transfer firearms), the fact that that person was armed with a firearm, used or attempted to be used, and had no license to carry the same, shall be evidence of that person's intention to commit the offense.

---

[1] The PCRA court found trial counsel had taken an exception to the non-licensure charge. **Id.**

42 Pa.C.S.A. § 6104. Our Supreme Court has concluded that an instruction incorporating Section 6104 is constitutional. *See Commonwealth v. Hall*, 830 A.2d 537, 549 (Pa. 2003). Moreover, our review discloses the charge tracked the language of the standard jury instruction. *See* Pa. SSJI (Crim), § 15.6104 (2019). It is settled, "Where the trial court's instructions track the Pennsylvania Suggested Standard Criminal Jury Instructions, it is presumed such instructions are an accurate statement of the law." *Commonwealth v. Akhmedov*, 216 A.3d 307, 321 (Pa. Super. 2019). Thus, Appellant failed to plead and prove a different objection by trial counsel would have succeeded. Even if not waived, this claim would lack merit.

Appellant also claims trial counsel was ineffective for not requesting a similar instruction to the charge of voluntary manslaughter. Appellant argues "giving this instruction in the context of the murder charge but **not** the voluntary manslaughter charge could easily [have] led to confusion among the jury." Appellant's Brief at 14 (emphasis in original). Appellant argues:

> If the jury followed the [trial c]ourt's **express** instructions and found that Appellant used an unlicensed firearm, they had no other option but to find Appellant guilty of murder rather than voluntary manslaughter. Murder was the **only** charge they had been told about which also incorporated the unlicensed firearm. In other words, if they found that Appellant had an unlicensed firearm, they had no other option but to find him guilty of murder and that voluntary manslaughter was "off the table."

*Id.* at 15 (emphases in original).

As described above, the trial court instructed the jury that they "may" regard evidence Appellant was carrying an unlicensed gun as "one item" of

- 10 -

circumstantial evidence with respect to the intent to commit the murder. N.T., 3/18/14, at 130. The trial court did not require the jury to consider this as evidence of intent. *Id.* The trial court also instructed the jury it was up to them to decide "what weight, if any" to give to that piece of evidence. *Id.* Lastly, the court charged the jury, "Evidence of non-licensure alone is **not sufficient** to prove that the defendant intended commit the offense of murder." *Id.* (emphasis added).

Our review discloses the trial court explicitly charged the jury that they **could not** find Appellant guilty of murder merely because he possessed an unlicensed firearm. N.T., 3/18/14, at 130. "It is well settled that the jury is presumed to follow the trial court's instructions." *Commonwealth v. Becher*, 293 A.3d 1226, 1240 (Pa. Super. 2023). Appellant does not point to anything in the record to support his claim that the jury was confused or failed to follow the trial court's instruction. Appellant's claim that trial counsel was ineffective for failing to request the Section 6104 instruction as part of the voluntary manslaughter charge does not merit relief. Moreover, as Appellant has not shown arguable merit to his underlying claim of trial counsel's ineffectiveness, his layered ineffectiveness claim as to PCRA counsel fails. *Burkett*, 5 A.3d at 1270; Appellant's Brief at 19.

In his second issue, Appellant alleges PCRA counsel was ineffective for failing to raise nine claims of trial counsel's ineffectiveness. Appellant's Brief

at 19-57. For the reasons discussed below, none of the underlying claims of trial counsel's ineffectiveness merit relief. **Burkett**, 5 A.3d at 1270.

Appellant argues trial counsel was ineffective for "advising Appellant to reject the plea offer from the Commonwealth of 25 to 50 years[.]" Appellant's Brief at 23; **see id.** at 23-30. Appellant claims he informed trial counsel that he wanted to accept the guilty plea, but trial counsel "vehemently advised [him] not to accept the offer. Counsel proceeded to advise [him] that there is no evidence of first[-]degree murder and that [he] will not lose the case[.]" **Id.** at 24.

The PCRA court explained its rejection of this claim:

The requirements of trial counsel in advising a client regarding plea offers is well-settled. Trial counsel has a duty to inform his client of any plea offers, and to communicate not only the terms of the offer, but also the relative merits of the offer compared to his client's chances at trial. **Commonwealth v. Bazzley**, 237 A.3d 459 (Pa. Super. 2020) (unpublished memorandum, at 7-8).[2] Moreover, a post-conviction petitioner seeking relief on the basis that counsel's ineffectiveness caused him or her to reject a guilty plea must demonstrate the following:

> [B]ut for the ineffective advice of counsel there is a reasonable probability that (1) the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) that the court would have accepted its terms; and (3) that the conviction or sentence, or both, under the offer's terms would

---

[2] **See** Pa.R.A.P. 126(b) (unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

have been less severe than under the judgment and sentence that in fact were imposed.

*Commonwealth v. Steckley*, 128 A.3d 826, 832 (Pa. Super. 2015). The trial record reflects that counsel advised [Appellant] of the Commonwealth's offer and had sufficient communications with [Appellant] regarding what the consequences would be if he rejected the offer:

Trial counsel: Should you be found guilty of murder in the first degree, do you understand. . . that you would be facing a mandatory penalty of life imprisonment and that would be life without the possibility of parole?

[Appellant]: Yes.

….

Trial counsel: Do you understand that the district attorney has extended an offer of a guilty plea. . . if you're willing to admit to or plead guilty to a charge of murder in the third degree and the weapons offenses, the Commonwealth is prepared to recommend a sentence to the court of 25 to 50 years in jail. Do you understand that sir?

[Appellant]: Yes.

Trial counsel: Have you and I discussed the offer that's been extended to you by the Commonwealth?

[Appellant]: Yes.

Trial counsel: Have you rejected that offer, sir?

[Appellant]: Yes.

Trial counsel: **And is it your decision and your decision alone, sir, to go to trial on this case?**

[Appellant]: **Yes.**

(N.T., 3/12/14, 70-85).

Trial counsel also acknowledged that he forewarned [Appellant] of the likelihood of his case proceeding immediately to sentencing following any conviction due to the mandatory penalty involved. (N.T., 3/19/14, 7-8). [Appellant] clearly understood the risks that he was up against when he made the decision to reject the Commonwealth's plea offer.

Nonetheless, even if counsel had been ineffective in explaining the relevant risks and benefits of the Commonwealth's offer, [Appellant] cannot establish a reasonable probability that he would have accepted the plea in the absence of his trial counsel's alleged ineffectiveness. Notably, the trial court offered [Appellant] additional time to consider, for himself, whether to accept or reject the offer:

> Trial court: Before I get your final decision, I'm going to let you think it over during lunch. . . when we come back, I'll ask you again... if you want to accept the offer, the offer will still be open at that point.
>
> [Appellant]: I don't need no time. That's still life [25 to 50 years]. That's pretty much still life. I can't accept that.
>
> Trial court: So[,] you are satisfied? Have all [] your questions about the offer been answered?
>
> [Appellant]: Yes.
>
> Trial Court: Do you want additional time to think it over?
>
> [Appellant]: No.
>
> Trial court: So[,] you are satisfied that you do not wish to accept the offer of 25 to 50 years; is that correct?
>
> [Appellant]: Yes.

(N.T., 3/12/14, 83-85).

The above exchange establishes that [Appellant] weighed the relative risks of rejecting the offer against the benefits. He

perceived the Commonwealth's offer as essentially being the equivalent of a life sentence, and rejected the offer based on this assessment. Moreover, it was only after this thorough and comprehensive exchange that the court entered its finding that the Commonwealth's offer had been fully explained and that [Appellant] rejected it knowingly, voluntarily, and intelligently. (N.T., 3/12/14, at 85). Therefore, the fact that [Appellant] decided to reject the Commonwealth's offer and now regrets his decision to do so does not lead to the conclusion that his trial counsel was ineffective. ***Bazzley***, 237 A.3d at 459.

PCRA Court Opinion, 10/28/22, at 13-16 (citation formats and capitalization modified; some emphasis added, some omitted; footnote added).

The record and law support the PCRA court's reasoning and we agree with its conclusion. ***See id.*** "A defendant is bound by the statements which he makes during his plea colloquy and cannot assert challenges to his plea that contradict his statements when he entered the plea." ***Commonwealth v. Jamison***, 284 A.3d 501, 506 (Pa. Super. 2022) (citations omitted). Appellant cannot obtain relief by claiming that he lied during his colloquy. This issue does not merit relief.

Appellant next claims trial counsel was ineffective for "failing to amend the *pro se* motion to suppress and/or file a counseled motion to suppress challenging the credibility and reliability of the evidentiary basis for the vehicle stop." Appellant's Brief at 30 (capitalization modified); ***see also id.*** at 30-33; Appellant's Reply Brief at 12-13.

While Appellant alludes to the three-part test for determining counsel's ineffectiveness, he does not discuss the first two prongs other than to state, "Counsel had no objectively reasonable basis for not at least filing a counseled

motion" to suppress. Appellant's Brief at 32. Appellant does not articulate a legal basis for such a motion, other than baldly asserting "the encounter was not supported by reasonable suspicion." *Id.* at 32; *see id.* at 30-33. Appellant also provides no factual basis for this claim, other than his allegation that "it was unlikely if not impossible for [the police officers] to have witnessed what they alleged they saw including that the van was traveling at a high rate of speed." *Id.* at 31. Because Appellant has not discussed the first two prongs of the test or provided legal support, his claim of trial counsel's ineffectiveness fails. *See Commonwealth v. Rolan*, 964 A.2d 398, 406 (Pa. Super. 2008) (where appellant fails to prove any one prong of the ineffectiveness test, he does not meet his burden, and counsel is deemed constitutionally effective).

Moreover, the claim lacks arguable merit. We have long held:

To conduct an investigative detention, police must have reasonable suspicion of criminal activity. In reviewing whether reasonable suspicion ... exists, we must ... examine the totality of the circumstances to determine whether there exists a particularized and objective basis for suspecting an individual [ ] of criminal activity. Even innocent factors, viewed together, may arouse suspicion that criminal activity is afoot. Moreover, in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to specific reasonable inferences he is entitled to draw from the facts in light of his experience.

*Commonwealth v. Knupp*, 290 A.3d 759, 767 (Pa. Super. 2023) (citations and quotation marks omitted).

At trial, Philadelphia Police Officer Thomas Bimble testified that at around 6:00 a.m. on May 27, 2012, he stood with two other police officers

outside the police station at 24th and Wolf Streets in Philadelphia. N.T., 3/13/14, at 111-12. Officer Bimble heard 8-9 gunshots "about a block away." *Id.* at 112. He and his partner jumped into their police car, activated lights and sirens, and drove toward the sounds. They arrived at the scene within ten seconds of hearing the shots. *Id.* at 113. They saw a "brown minivan back up and then [it pulled] off at a high rate of speed." *Id.* The van led multiple police cars on a high-speed chase through South Philadelphia. *Id.* at 114-17; *see also* N.T., 3/14/14, at 10-12, 18-23. While pursuing the van, Officer Bimble observed an individual, later identified as Appellant, jump out of the passenger side of the van. N.T., 3/13/14, 118, 121.

Philadelphia Police Sergeant Richard Crawford, who joined in the pursuit of the van, saw a second individual, later identified as Green, jump out of the still-moving van. N.T., 3/14/14, at 21-24. Philadelphia Police Officer Earl Bonner, who also joined in the pursuit, testified the police discovered the van abandoned, with the doors opened, and saw two men, later identified as Hines and Duncan, running away from the van. N.T., 3/13/14, at 64; 3/14/14, at 25, 30-32; 3/17/14, at 92-93.

Police found a gun, later identified by ballistics testing as the murder weapon, abandoned on the street near where Appellant had jumped from the van; Appellant's DNA was on the gun. N.T., 3/13/14, at 43-44, 182-85; 3/14/14, at 80-91; 108-11; 3/17/14, at 11, 41. Forensics testing also revealed Appellant's fingerprints in the van. N.T., 3/17/14, at 9-10.

The record reflects Appellant abandoned both the van and the gun. A defendant has no "standing to complain of a search or seizure of property that he has voluntarily abandoned." ***Commonwealth v. Shoatz***, 366 A.2d 1216, 1220 (Pa. 1976). ***See Commonwealth v. Pizarro***, 723 A.2d 675, 679 (Pa. Super. 1998) ("A criminal defendant has no privacy expectation in property that he has voluntarily abandoned or relinquished.").

> Although abandoned property may normally be obtained and used for evidentiary purposes by the police, such property may not be utilized where the abandonment is coerced by unlawful police action.

***Shoatz***, 366 A.2d at 1220. In ***Commonwealth v. Matos***, 672 A.2d 769 (Pa. 1996), our Supreme Court held that, under Article 1, Section 8 of the Pennsylvania Constitution, "a police officer's pursuit of a person fleeing the officer was a seizure" and therefore, "any contraband discarded during the pursuit was abandoned by coercion," unless the officer had the requisite reasonable suspicion to stop or probable cause to arrest the fleeing suspect. ***Commonwealth v. Cook***, 735 A.2d 673, 675 (Pa. 1999), (citing ***Matos***, 672 A.2d at 771).

Instantly, police possessed the requisite reasonable suspicion to justify their pursuit of the van. Within thirty seconds of shots being fired, the police, with lights and sirens activated on their vehicle, observed the van reverse and speed away from the immediate area of the shooting. The van then led multiple police cars on a high-speed chase through South Philadelphia. ***See Commonwealth v. Walls***, 53 A.3d 889, 894-95 (Pa. Super. 2012)

- 18 -

(concluding police possessed sufficient reasonable suspicion to justify an investigatory detention where the defendant, who generally matched description of the suspect, fled from a police officer within minutes of and near to the location of a report of a man with a gun); *see also Commonwealth v. Allen*, 279 A.3d 1282 (Pa. Super. 2022) (unpublished memorandum, at **8-10) (concluding officer possessed sufficient reasonable suspicion to justify pursuit of defendant where officer heard a gunshot, observed a man fleeing from the vicinity holding his arm in a manner suggesting a concealed weapon, and saw the man jump into a vehicle and speed away from the scene). Under the circumstances in this case, Appellant failed to establish prejudice resulting from trial counsel's failure to file a suppression motion. This issue does not merit relief.

Appellant next maintains trial counsel ineffectively advised Appellant to not testify about "Appellant's lack of specific intent, including but not limited to his mental and physical state at the time of the incident, and his belief that he needed to act in self-defense." Appellant's Brief at 33; *see id.* at 33-40. Appellant argues that because his sole defense was a claim of self-defense, his testimony was necessary "for the jury to determine if Appellant actually acted in self-defense or with premeditation[.]" *Id.* at 39.

This claim is belied by the record. The trial court conducted an on-the-record colloquy with Appellant concerning his right to testify. Appellant confirmed three times, under oath, that he had discussed his right to testify

with trial counsel, and had decided to invoke his Fifth Amendment right not to testify. N.T., 3/18/14, at 25-28. Trial counsel advised Appellant on-the-record of his right to testify; advised Appellant the decision to testify was his alone; and Appellant stated that he understood. *Id.* at 26-27. Trial counsel asked Appellant if he had been threatened or coerced into deciding not to testify; Appellant responded, "no." *Id.* at 27. A defendant "who made a knowing, voluntary, intelligent waiver of testimony may not later claim ineffective assistance of counsel for failure to testify." *Commonwealth v. Lawson*, 762 A.2d 753, 755 (Pa. Super. 2000) (citations omitted); *see also Commonwealth v. Cappelli*, 489 A.2d 813, 819 (Pa. Super. 1985) (defendant may not "postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting of counsel[.]").

Appellant also contends his waiver of his right to testify was not knowing, intelligent and voluntary because he was under the influence of marijuana and Xanax. Appellant's Brief at 41-42. When asked during the colloquy if he was under the influence of drugs or alcohol, Appellant replied, "Yes." N.T., 3/18/14, at 26. Appellant offered no explanation. *Id.* Neither trial counsel nor the court inquired further. *Id.* Appellant continued to answer every colloquy question, and engaged in a discussion with the trial court and counsel about a witness he had been unable to locate. *Id.* at 26-29.

As the PCRA court explained:

While guilty pleas and jury trial waivers expressly require a trial court to conduct a colloquy to determine whether a defendant's waiver was made knowingly, intelligently, and voluntarily, a trial court is not required to conduct such a colloquy where a defendant waives his right to testify. *Commonwealth v. Todd*, 820 A.2d 707, 712 (Pa. Super. 2003); *See also Commonwealth v. Duffy*, 832 A.2d 1132, 1141 n.3 (Pa. Super. 2003) ("we note that there is no requirement that the trial court conduct an on-the-record colloquy when a defendant waives his right to testify")[; *Commonwealth v. McCamey*, 240 A.3d 187 (Pa. Super. 2020) (unpublished memorandum, at 4)]; *Contra* Pa. R.Crim.P. 590 and 620. The only requirement is that the defendant understands his decision not to testify [—] if not by colloquy, then by the presumed competent advice of counsel. *Todd*, 820 A.3d at 712. The exchange between trial counsel and [Appellant] at trial, … adequately demonstrates that [Appellant] understood his decision not to testify and made his decision after a full consultation with counsel. [Appellant] responded appropriately to all of trial counsel's questions and, notably, asserted that he did not wish to testify three separate times. (N.T., 3/18/14, at 27).

Relatedly, [the Superior C]ourt has specifically held that the mere fact that a defendant was under the influence of a controlled substance at the time of entering a guilty plea does not entitle him to withdraw the plea. *See [Commonwealth v.] Jackson*, 569 A.2d [964, 966 (Pa. Super. 1990)] (holding that although defendant was under the influence of medication at the time of his *nolo contendere* plea, he was not permitted to withdraw his plea where he responded to all plea colloquy questions appropriately and thus demonstrated his understanding of the proceedings); *Commonwealth v. Hazen*, 462 A.2d 732, 735 (Pa. Super. 1983) (holding that the defendant, who was under the influence of a tranquilizing drug at the time of his guilty plea, was not entitled to withdraw his plea where defendant's counsel opined that he was competent and court found that he cogently participated in a lengthy plea colloquy). … [Appellant's] intelligent and coherent answers during his exchange with trial counsel belie his contention. Thus, [Appellant] knowingly, voluntarily, and intelligently waived his right to testify and cannot now claim that his counsel was ineffective, especially considering there is no requirement of a colloquy in the first place.

PCRA Court Opinion, 10/28/22, at 19-20.

Again, the record and the law support the PCRA court's reasoning. Appellant's claims that trial counsel was ineffective for advising him not to testify and/or for not requesting a continuance because Appellant was under the influence do not merit relief.

Appellant next argues trial counsel was ineffective

for failing to object, move to suppress and give a curative instruction to the trial testimony of the victim[']s mother, Kathy Morris[,] when Ms. Morris had previously violated the sequestration order imposed at the preliminary hearing.

Appellant's Brief at 43. Appellant avers that prior to the start of the preliminary hearing, the municipal court judge issued an order sequestering witnesses. *Id.* Appellant claims that despite the order, Ms. Morris remained in the courtroom throughout the preliminary hearing. *Id.* at 43. Appellant asserts that trial counsel should have moved to suppress Ms. Morris's testimony **at trial**, or requested a cautionary instruction, due to her alleged violation of the sequestration order. *Id.* at 44-45.[3] Appellant maintains prejudice resulted because Ms. Morris "was able to mold her trial testimony." *Id.* at 46. Appellant suggests that Ms. Morris may have fabricated her trial

---

[3] To the extent Appellant complains counsel should have objected to Ms. Morris's presence at the preliminary hearing, *see* Appellant's Brief at 44-45, the claim lacks merit. Once a defendant has pled guilty or gone to trial and been found guilty, he cannot establish prejudice based on alleged errors that occurred at a preliminary hearing. *See Commonwealth v. Sanchez*, 82 A.3d 943, 984 (Pa. 2013).

testimony that the victim did not carry a gun, based on what she heard at the preliminary hearing. *Id.* at 46-47.

Appellant acknowledges the transcript of the March 13, 2013, preliminary hearing is not in the certified record. Appellant's Reply Brief at 19 n.2. Appellant claims he rectified the omission by attaching a copy of the transcript to his reply brief. *Id.* This Court has stated repeatedly that copying material and attaching it to the brief does not make it part of the certified record. *First Union Nat. Bank v. F.A. Realty Investors Corp.*, 812 A.2d 719, 724 n.3 (Pa. Super. 2002); *In re M.T.*, 607 A.2d 271, 275 (Pa. Super. 1992). Pennsylvania Rule of Appellate Procedure 1926 delineates the proper method for supplementing the record. Accordingly, we cannot consider the transcript attached to Appellant's Reply Brief.

In any event, the claim lacks arguable merit. Pennsylvania Rule of Evidence 615 provides for sequestration of witnesses. Pa.R.E. 615. If a sequestration order is violated, the trial court has discretion to order a mistrial, prohibit the witness from testifying, or issue a cautionary instruction. *Id.*, cmt. "In exercising its discretion, the trial court should consider (1) the seriousness of the violation, (2) its impact on the testimony of the witness and, (3) its probable impact on the outcome of the trial." *Commonwealth v. Mokluk*, 444 A.2d 1214, 1216 (Pa. Super. 1982). The court should also consider whether the violation was intentional and whether the party calling the witness instigated the violation. *Id.*

Here, Appellant claims the municipal court ordered sequestration of **witnesses testifying at the preliminary hearing**. Appellant's Brief at 43. Appellant then acknowledges Ms. Morris was not a witness at the preliminary hearing. *Id.* at 46. Rather, she was a witness at Appellant's trial, which took place approximately one year later. There is no order of record directing the sequestration of non-testifying witnesses, or restricting those present at the preliminary hearing from testifying at trial. Given that trial counsel moved for sequestration of the trial witnesses, there is no indication that counsel believed that the prior sequestration order remained in effect.[4] N.T., 3/12/14, at 87.

In *Commonwealth v. Fickling*, 3965 EDA 2016 (Pa. Super. Jan. 11, 2019) (unpublished memorandum), a panel of this Court addressed the effect of a municipal court's sequestration order on later trial proceedings. In *Fickling*, two police officers violated the municipal court's sequestration order by briefly speaking with each other as they passed entering and exiting the courtroom. *Fickling*, at 3-4. The municipal court found the officers had violated its sequestration order but imposed no further penalty. *Id.* at 4. The municipal court bound one of the three defendants over for trial but dismissed the charges against the remaining two. *Id.* The Commonwealth later refiled charges against those two defendants. *Id.* at 6. However, because of the

---

[4] Appellant does not claim Ms. Morris violated the trial court's sequestration order. Appellant's Brief at 43-47.

prior violation of the sequestration order, the trial court prohibited the officers from testifying at the defendants' joint trial. *Id.* The Commonwealth appealed. This Court held that the ruling was error. *Id.* at 10. We stated:

> [T]he imposition of a sanction for purported violation of another judge's sequestration order, thereby precluding witnesses from testifying in a subsequent jury trial when the prior order did not impose such a sanction, constitutes an abuse of discretion.

*Id.* at 11. While *Fickling* is not binding, we its reasoning to be persuasive.

Instantly, unlike *Fickling*, there was no finding or indication that Ms. Morris violated a sequestration order. Under these circumstances, trial counsel had no reasonable basis to seek to preclude Ms. Morris's trial testimony or to ask for a cautionary instruction.

Further, Ms. Morris's testimony that the victim did not carry a gun was cumulative. Kimyatta McGuffie, the victim's girlfriend, also testified that the victim was not armed. N.T., 3/12/14, at 130. Appellant thus failed to establish prejudice from Ms. Morris's testimony. *Commonwealth v. Davis*, 704 A.2d 650, 653 (Pa. Super. 1997) (Appellant was not prejudiced by testimony that was merely cumulative). This ineffectiveness claim does not merit relief.

> Appellant next contends trial counsel was ineffective for
>
> failing to ask for a continuance in order to retain and consult with a "gunshot sound" expert after the Commonwealth, without providing any advance notice to the defense, elicited speculative testimony from Police Officer Bimble as an expert in the sound of gunshots[,] opining as to the number of guns that were fired.

Appellant's Brief at 47; *see id.* at 47-52. Appellant complains Officer Bimble was permitted to testify that he had been in situations where multiple guns and/or different types of guns had been fired at the same time. Appellant's Brief at 49; N.T., 3/17/14, at 204-06. However, Officer Bimble confirmed he heard only one gun fired the morning of the murder. *Id.* Appellant argues that Officer Bimble testified as both a fact and expert witness, and trial counsel should have made a contemporaneous objection and/or requested a continuance to consult an expert for the defense. Appellant's Brief at 49.

The record demonstrates trial counsel objected to Officer Bimble's testimony, but the trial court overruled the objection. N.T., 3/17/14, at 205-06. On direct appeal, counsel claimed the "trial court improperly allowed Officer Bimble to offer" expert testimony. *Bell*, 125 A.3d 438 (unpublished memorandum at 8). This Court concluded Officer Bimble properly testified as a lay witness about his perception of events. *Id.* at 8-10. Appellant's claim that Officer Bimble testified as an expert has been litigated and is baseless.

As to Appellant's claim regarding a defense expert, "[t]o establish ineffective assistance of counsel for the failure to present an expert witness, appellant must present facts establishing that counsel knew or should have known of the particular witness." *Commonwealth v. Millward*, 830 A.2d 991, 994 (Pa. Super. 2003) (citation omitted). Further, "the [appellant] must articulate what evidence was available and identify the witness who was

willing to offer such evidence." ***Commonwealth v. Bryant***, 855 A.2d 726, 745 (Pa. 2004) (citations omitted).

Appellant admits uncertainty that such expert existed. Appellant's Brief at 50-51 n.33. Because Appellant failed to identify an expert witness willing to testify, his claim fails. ***See Bryant***, 855 A.2d at 745; ***see also Commonwealth v. Gwynn***, 943 A.2d 940, 945 (Pa. 2008) (when defendant claims counsel was ineffective for failing to introduce expert testimony at trial, he must articulate "what evidence was available and identify a witness who was willing to offer such [evidence].") (citations omitted).

In his next claim, Appellant asserts trial counsel was ineffective for

failing to timely object, move to strike, seek a mistrial or a curative instruction after the Commonwealth introduced evidence that [] Green had been charged with unrelated gun offenses.

Appellant's Brief at 52; ***see id.*** at 52-54. Appellant also maintains the admission of evidence regarding a Glock 17 that belonged to Green "made it appear to the jury that Appellant was in a conspiracy with Green." ***Id.*** at 53.

"All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Evidence is relevant if "(a) it has the tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury,

undue delay, wasting time, or needlessly presenting cumulative evidence."
Pa.R.E. 403.

While Appellant claims the Commonwealth improperly introduced evidence that Green was charged with unrelated gun offenses, Appellant fails to cite, and we have not located, any place in the trial transcripts where this occurred. Also, other than the mention of this claim on page 52 of his brief, Appellant fails to develop this claim. *Id.* at 53-54. This Court will not act as counsel and will not develop arguments on behalf of an appellant. *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007); *Bombar v. West Am. Ins. Co.*, 932 A.2d 78, 94 (Pa. Super. 2007). When briefing deficiencies hinder our ability to conduct meaningful appellate review, we may deem the issues waived. Pa.R.A.P. 2101; *Hardy*, *supra*. Appellant's undeveloped claim hinders our review. Accordingly, we deem it waived.

With respect to Appellant's claim that trial counsel was ineffective for failing to object to the admission of the Glock 17, the PCRA court properly rejected this claim, explaining:

> First, the Glock 17 is certainly relevant to [Appellant's] case. The trial testimony indicated [] Green was with [Appellant's] brother and [Appellant] in the car that was used to find the victim. That [] Green eventually was arrested with a 9mm firearm [the same caliber as the murder weapon], which subsequently was excluded as the firearm used to kill the complainant, is a fact that is more probative than prejudicial. (N.T., 3/14/14, at 91). …
>
> [Appellant's] second point [—] that the introduction of the Glock 17 made it appear to the jury that he and Green had conspired to murder the victim [—] is nothing more than pure speculation and it is irrelevant. The existence of a conspiracy was

- 28 -

neither suggested, implied, nor argued by the Commonwealth. Further, as [Appellant] himself acknowledges … conspiracy was not even an offense with which he was charged. He was only charged with those offenses that could be substantiated with evidentiary proof. [Appellant] therefore cannot present any information demonstrating that a conspiracy was at all contemplated by the jury during its deliberations. Moreover, in light of the overwhelming evidence of guilt, [Appellant] cannot establish a reasonable probability that either excluding the Glock or requesting a limiting instruction would have changed the outcome of his trial.

PCRA Court Opinion, 10/28/22, at 26-27. The record and the law support the PCRA court's reasoning. This issue does not merit relief.

Appellant next claims trial counsel was ineffective for failing to have the victim's clothing and hands tested for GSR. Appellant's Brief at 54-56. Appellant argues, "Had the testing been done and GSR found on the victim's clothing it would have fully supported the Appellant's claim that the victim had been armed [] and fired a gun at him." *Id.* at 55.

At trial, the medical examiner testified that none of the victim's garments had any visible GSR, which demonstrated the victim was shot from at least two-and-a-half feet away. N.T., 3/13/14, at 86-87, 105. The medical examiner also stated that the victim's hands were not tested for GSR because the medical examiner's office does not do that specific testing. *Id.* at 106.

Both the victim's girlfriend and his mother testified that the victim did not carry a weapon. N.T., 3/12/14, at 130; N.T., 3/13/14, at 7. Also, no gun was recovered from the scene. *Id.* at 14-16; 85, 88, 91-92, 94-98, 124-25. Ballistics testing showed that the eight fired cartridge casings at the scene, as

well as the bullets that hit the victim, came from Appellant's gun. N.T. 3/13/14, at 33-35, 180-83; 3/14/14, at 80-91, 109-11; 3/17/14, at 11, 41. Although Hines testified that one of the men he was arguing with pulled a gun on him, he acknowledged the argument with the men broke up when police arrived. N.T., 3/17/14, at 71-72. Hines never informed police that one of the men had a gun. *Id.*

> On direct appeal, this Court rejected Appellant's claim of self-defense:
>
> [S]elf-defense… was inapplicable herein. Appellant did not act to defend himself. To the contrary, Appellant declared that he was going to resolve the situation between Hines and [the victim], armed himself, and entered a vehicle to hunt for the victim. After Appellant observed the victim walking down the street, Appellant exited the van and gunned him down. **The victim was not in possession of a gun and fired no shots**. Appellant's argument, which is that he acted in self-defense, is wholly unsupported by the events in question. The evidence establishes specific intent to kill in that Appellant searched out [the victim while] armed with his weapon[,] and then [] used that gun to shoot the victim in the chest.

*Bell*, 125 A.3d at 438 (unpublished memorandum, at 5).

Appellant has not demonstrated a reasonable basis for trial counsel to request GSR testing of the victim's hands and failed to demonstrate prejudice resulting from counsel's failure to do so. This claim does not merit relief.

Finally, Appellant complains trial counsel was ineffective for not objecting to a jury charge. Appellant's Brief at 56. Appellant asserts the trial court improperly gave "the same instruction in relation to the 'inference' portion of the first degree [murder] (intent) and third degree (malice) murder

crimes." ***Id.*** Appellant's argument consists of the following sentence, in which Appellant states the trial court

> instructed the jury identically as to the inference they could draw from the use of a gun on a vital body part, to find specific intent necessary for a verdict of first-degree murder, and the malice necessary to establish third degree murder.

***Id.*** (record citation omitted).

"When an appellant's argument is underdeveloped, we may not supply it with a better one." ***Commonwealth v. Deible***, --- A.3d ---, 2023 WL 4715187, at *8 (Pa. Super. July 25, 2023) (citation omitted). The Pennsylvania Supreme Court recently found waiver where an appellant submits

> only "generalized assertions[,] ... not arguments, much less reasoned and developed arguments supported with citations to relevant legal authority." **[*Commonwealth v. *]*Spotz*** [610 Pa. 17], 18 A.3d [244,] 326 [(2011)]; ***see also id.*** at 262 n.9[.] This type of mere issue spotting without sufficient analysis or legal support precludes appellate review. ***See In re Beach's Estate***, 324 Pa. 142, 188 A. 108, 108 (1936) (*per curiam*) (an "appellant must not only specifically assign as error any rulings complained of, but, further, must point out wherein the error lies and reasons therefor, or they will be deemed to have been waived").

***Commonwealth v. Armolt***, 294 A.3d 364, 378 (Pa. 2023).

As Appellant has failed to develop an argument to support his claim, he has waived his challenge to counsel's ineffectiveness for failing to challenge a jury charge.

For the above reasons, Appellant's challenges to trial counsel's ineffectiveness are either waived or meritless. Because none of these claims

merit relief, Appellant's claims of PCRA counsel's ineffective assistance also fail. **Burkett**, 5 A.3d at 1270. Accordingly, we affirm the PCRA's dismissal of Appellant's first PCRA petition.

Order affirmed.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
Prothonotary

*Date: 8/30/2023*